ROWLANDS, Respondent, vs. CHICAGO & NORTHWESTERN
RAILWAY COMPANY, Appellant.

*February 23—March 12, 1912.*

*Statutes: Federal and state: Judicial notice: Pleading: Master and
servant: Railroads: Injury to employee: Negligence: Defective
mail crane: Questions for jury: Excessive damages: Special ver-
dict: Omitted facts: Presumption on appeal.*

1. Acts of Congress are not foreign laws, and state courts take judi-
   cial notice of them; and, ordinarily, if the facts alleged in the
   complaint bring the case within a federal statute, that is suffi-
   cient without pleading the statute itself.
2. In an action against a railway company for personal injuries, an
   allegation that at the time of the injury the plaintiff was em-
   ployed by defendant as a fireman upon an engine running be-
   tween Chicago and Milwaukee and hauling passengers, baggage,
   and mail, shows that he was engaged in facilitating interstate
   commerce and hence that his rights are referable to the federal
   Employers' Liability Act (35 U. S. Stats. at Large, 65, ch. 149,
   as amended April 5, 1910).
3. As to such employees, the federal statute supersedes state stat-
   utes covering the same field.
4. If in such case there was any informality about the pleading, as
   regards the statute, the remedy of defendant was by motion to
   make more definite and certain.
5. Where the fireman on an engine, while leaning out of the cab
   to view the track ahead, was hit by the arm of a mail crane,
   and thereby the outer plate of his skull was fractured, while
   the inner plate, only about one sixteenth of an inch therefrom,
   was not broken, undisputed evidence that the arm of the crane
   was one inch lower than the standard prescribed by law was
   sufficient to sustain a finding by the jury that defendant was
   negligent, regardless of whether there was any conflict in the
   evidence as to the amount of clearance between the side of the
   train and the end of the arm.
6. There being evidence in such case that plaintiff had no knowl-
   edge of the mail crane and had not before fired on a mail train
   passing that point in the daytime, and that when firing on
   freight trains his attention would not be called to the danger
   because the arm of the crane was turned away when not in
   use, the questions of assumption of risk and contributory neg-
   ligence were for the jury.

7. An award of $8,700 is *held* not excessive for an injury to a loco-
motive fireman twenty-eight years of age and earning $125 a
month, where his skull was fractured for a length of four and
one-half inches, he was wholly incapacitated for labor for a
year, and the evidence tended to show that the injury was
permanent, at least without an operation the benefit from which
would be uncertain.

8. On appeal, as against an objection that the verdict is informal
and does not cover all the material issues, where appellant did
not at the trial request the submission of any question which
would have cured the defect complained of, it will be presumed
that the trial court found favorably to respondent on any ma-
terial issue not passed on by the jury.

APPEAL from a judgment of the circuit court for Wauke-
sha county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

On the morning of February 25, 1910, plaintiff was in the
employ of the defendant company as a fireman on a locomo-
tive hauling a combination passenger, baggage, express, and
mail train from the city of Chicago to the city of Milwaukee.
The train was a fast train and made but a few stops between
the two stations above named. At Zion City, Illinois, mail
was taken aboard while the train was traveling at a high rate
of speed. For this purpose there was constructed at the
westerly side of the railway tracks a mail crane, which con-
sisted of an upright mast or standard placed on a foundation
and standing perpendicularly some distance from the near-
est rail of the track. From the upper portion of the mast,
at a proper height to hold the mail sack in position, an arm
extended toward the track, and from this arm the suspended
mail sack was grabbed by a device attached to the side of the
mail car. As the train approached the station, plaintiff, in
order to get a view ahead, projected his head out of the cab
window and was struck by the arm of the crane, and this ac-
tion was brought to recover damages for injuries sustained.
It was claimed that the defendant was negligent in maintain-
ing the said mail crane so near its tracks as to endanger the
lives of passengers and employees, and further, that the
frame which inclosed the mast and which was intended to hold

it in a vertical position had become worn so that there was from an inch and a half to two inches play, which permitted the mast to droop toward the track when the crane was in use and likewise permitted the arm of the crane to project downward and nearer to the track than it would otherwise come; also that it was necessary for plaintiff in the performance of his duties to keep a sharp lookout ahead, and that the said crane was out of repair and so situated as to render his place of work unsafe.  The answer denied generally the allegations of the complaint, alleged contributory negligence on the part of the plaintiff, and further, that, the injuries having been received in the state of Illinois, the law of that state was applicable.  The case was submitted to the jury on a special verdict, which, with the answers thereto, is as follows:

"(1) At the time of the injury to the plaintiff was the mail crane in question, in its then position and condition, reasonably safe as regards the safety of defendant's employees working on the train?  A. No.

"(2) If you answer the first question 'No,' then answer this question: Was the working place of the plaintiff thereby made unsafe?  A. Yes.

"(3) If you answer the second question 'Yes,' then answer this question: Was such unsafe working place the proximate cause of plaintiff's injuries?  A. Yes.

"(4) Was plaintiff guilty of any negligence on his part which contributed proximately to produce his injuries? A. No.

"(5) What sum of money will compensate plaintiff for the damages suffered in consequence of the injuries received by him?  A. $8,700.

"(6) If you answer the fourth question 'Yes,' then answer this question: If the court shall order judgment for plaintiff, in what sum shall his damages be diminished on account of the negligence attributable to the plaintiff? A. ——."

Upon such verdict judgment was entered in favor of plaintiff, from which judgment defendant appeals.

For the appellant there was a brief by *William G. Wheeler,*

attorney, and *Edward M. Smart,* of counsel, and oral argument by *Mr. Smart.*

For the respondent there was a brief by *Holt & Coombs,* attorneys, and *E. Merton,* of counsel, and oral argument by *Mr. Merton* and *Mr. A. N. Coombs.*

BARNES, J.   The complaint alleged that the plaintiff was a resident of Wisconsin; that on February 25, 1910, he was in the employ of the defendant on a passenger engine owned by it and "used and operated over and upon the lines of said defendant company at and between the city of Chicago, in the state of Illinois, and the city of Milwaukee, in the state of Wisconsin," and further, "that on the morning of the 25th day of February, 1910, the plaintiff was employed by and working for said defendant company in the capacity of a fireman of an engine which was then and there being used to haul a combined passenger, baggage, express, and mail train from the city of Chicago northward toward the city of Milwaukee." It is further alleged that plaintiff, while employed as aforesaid, was injured at Zion City.

At the close of plaintiff's case in chief a motion was made to dismiss the action because the complaint was framed under the state statutes, whereas the proof showed that the case was one "which should be properly brought under the federal Employers' Liability Act." The motion was denied and such ruling is assigned as error.

We think the facts were sufficiently pleaded to show that the case was within the federal statute and that it was unnecessary to plead the statute itself. Acts of Congress are not foreign laws and state courts take judicial notice of them. 12 Ency. of Ev. 31, and cases cited in note 2. Ordinarily if the facts alleged bring the cause of action within the terms of a federal statute, this is sufficient. The averment that plaintiff was employed as a fireman on an engine running between Chicago and Milwaukee and hauling passengers and

mail shows that plaintiff was engaged in facilitating inter-state commerce. This being so, his rights were referable to the federal law referred to (35 U. S. Stats. at Large, 65, ch. 149, as amended April 5, 1910). As to such employees, the federal statute supersedes state statutes covering the same field. *Second Employers' Liability Cases (Mondou v. N. Y., N. H. & H. R. Co.)* 223 U. S. 1, 32 Sup. Ct. 169; *State v. C., M. & St. P. R. Co.* 136 Wis. 407, 117 N. W. 686. It is not claimed that the state courts have not jurisdiction to try actions coming under the statute referred to. If there was any informality about the pleading, the remedy of defend-ant was a motion to make the complaint more definite and certain. It was not a case where one cause of action was pleaded and another was proven. The pleader seems to have attempted to state the necessary facts to bring the case within the federal law. In *Creteau v. C. & N. W. R. Co.* 113 Minn. 418, 129 N. W. 855, relied on by appellant, the plaintiff spe-cifically pleaded ch. 254, Laws of Wisconsin for 1907, and based his right of recovery thereon, and the court held that it was error under such a pleading to allow a recovery under the federal law. We think the cause is far afield from the one we have before us.

The contention most strenuously urged by appellant is that there was no evidence of negligence on its part. Its wit-ness Main testified that mail cranes are erected on a uniform plan and that the standard clearance between the inside of the ball of the near rail and the catch near the end of the hook where the strap of the mail pouch is suspended is three feet nine inches. Witness Flynn testified that the regular clearance is three feet and nine inches from the inside of the ball of the rail to the end of the arm. There is a slight dis-crepancy between the testimony of the witnesses, as the pho-tographs offered indicate that the hook is not attached to the extreme end of the arm. Both witnesses are agreed that the standard distance from the top of the rail to the bottom of the

upper arm is ten feet and one half of an inch, and Flynn testified that the distance in the instant case was one inch less than the standard. It was also shown, and is undisputed, that the railway company is not permitted to change this standard without the consent of the United States. Defendant contends that the lateral clearance in the present case was two and one-half inches greater than the standard, and that therefore any extra play which the mast might have had did not bring the arm as close to the side of the train as it would have come had the standard clearance been maintained. Defendant also contends that the uncontradicted proof shows that the mast was wedged back at the time plaintiff was injured. Defendant's witness Flynn made the only measurements in reference to clearance that were produced, and it is argued that, inasmuch as the other witnesses only estimated the distance, their evidence raised no issue on the question. However this may be, we think there was evidence from which the jury could find defendant negligent. The demand of the public for rapid transit and frequent mail delivery has led to the introduction of the mail crane, and it, like other obstructions close to a railway track, has made the employment of trainmen more hazardous. Having adopted a standard that may of necessity be dangerous, defendant had no right to materially increase the danger by permitting the crane to become out of repair. The evidence is undisputed that the upper arm had worked out of the mortise in the mast three quarters of an inch. This had a tendency to throw it outward and downward, and no doubt accounts for the fact that it was an inch below the standard height. In a situation of this kind the departure from the standard cannot be regarded as trivial. Even an inch might materially increase the danger to employees, and the jury might well have found in the instant case that the lowering of the arm was the sole cause of plaintiff's injury, because it might conclude from the evidence that plaintiff was struck by the lower

corner of the arm. The outer plate of the skull was fractured, while the inner plate, only about one sixteenth of an inch therefrom, was not broken, notwithstanding the fact that it is much more frail and brittle than the outer plate. It is reasonably certain that, had the arm been an inch farther from plaintiff's head, he would either have escaped injury or have been injured very slightly. So, regardless of whether there was any conflict in the evidence as to the amount of clearance between the side of the train and the end of the arm, we think the undisputed facts in the case were such that the jury might have found the defendant negligent.

We are satisfied that the questions of assumption of hazard and of contributory negligence were jury questions, and that the court cannot say as a matter of law that plaintiff either assumed the risk or was guilty of contributory negligence. A review *in extenso* of the evidence on these questions would serve no useful purpose. The plaintiff testified that he thrust his head out of the window to look for signals, as it was his duty to do, and that he had no knowledge of the existence of the mail crane. He had not fired on any passenger train which ran through Zion City in the daytime, until the day he was injured, and his work on freight trains was not calculated to call his attention to the danger to be apprehended from mail cranes, inasmuch as the arms were swung away from the track when not in use and would not endanger an employee riding in the cab of an engine.

The jury awarded the plaintiff $8,700 damages, and it is contended that the verdict is excessive. The plaintiff was about twenty-eight years of age and earning $125 a month at the time of the injury. The injury itself was serious. The outer table of the skull was fractured for a length of four and one-half inches. Plaintiff testified that he was wholly incapacitated for labor during the year that elapsed between the time of the injury and the time of the trial.

There was medical testimony tending to show that the injury was permanent, at least unless relief could be secured by an operation, and it was a matter of conjecture whether an operation would afford anything more than temporary relief. The case is one where the award of the jury should not be disturbed.

It is said that the verdict is informal and insufficient because all of the material issues in the case were not submitted to the jury. No question was requested which would tend to cure the omissions complained of. Such being the case, we must presume that the court found in plaintiff's favor on any material issue not passed on by the jury.

*By the Court.*—Judgment affirmed.