FREDERICK WAIBEL, PLAINTIFF AND RESPONDENT, v.
WEST JERSEY AND SEASHORE RAILROAD COMPANY,
DEFENDANT AND APPELLANT.

Submitted March 22, 1915—Decided June 14, 1915.

1. In an action against a railroad company for damages sustained
   by a traveler at a highway grade crossing, when the testimony
   given by the plaintiff was that his horse was walking, that he
   listened carefully for a bell or whistle and heard nothing, mo-
   tions to nonsuit and to direct a verdict, upon the ground that there
   was no evidence of defendant's negligence in failing to give the
   statutory signals, were properly denied.

2. Chapter 278 of *Pamph. L.* 1910, *p.* 490, entitled "An act con-
   cerning the liability of railroads for injury to persons and prop-
   erty caused by running cars across public streets and highways,
   at which crossings no safety gates, bell or other device to give
   warning to the traveling public have been installed," does not
   violate the constitutional provision that every law shall embrace
   but one object and that shall be expressed in the title.   The
   sole object of the statute was to provide that in suits for in-
   jury or death occurring at a grade crossing where the railroad
   had not installed safety gates, bell or usual safety device, the
   plaintiff should not be nonsuited on the ground of contributory
   negligence, but the question whether the plaintiff or decedent
   exercised reasonable care should be left to the jury, and that
   object was within the purview of the title.

3. Chapter 278 of *Pamph. L.* 1910, *p.* 490, does not violate that
   clause of article 1, paragraph 7 of the constitution which pro-
   vides that the right of a trial by jury shall remain inviolate.

4. The rules relating to nonsuiting the plaintiff in an action to re-
   cover for injuries or death of a traveler at an unguarded grade
   highway crossing of a railroad, having been established by the
   courts and not by the constitution, the legislature may change

them by providing that the plaintiff shall not be nonsuited on the ground of contributory negligence, and that it shall be left to the jury to determine whether the plaintiff or decedent exercised reasonable care under the conditions existing at the crossing at the time of such injury or death.

On appeal from the Supreme Court.

For the appellant, *Gaskill & Gaskill*.

For the respondent, *Lawrence B. Reader* and *Howard L. Miller*.

The opinion of the court was delivered by

TRENCHARD, J.   This is an action against the defendant railroad company to recover damages sustained by the plaintiff who, on December 25th, 1913, while driving a horse and wagon upon a public highway, was struck by the defendant's train at an unguarded grade crossing.

The trial at the Gloucester Circuit resulted in a verdict for the plaintiff and from the consequent judgment the defendant appeals.

There was a motion to nonsuit and a motion to direct a verdict for the defendant.   Both were denied.

It is first contended that these motions should have been granted because there was no evidence that the statutory signals were not given, and hence no evidence of defendant's negligence.

But that contention is not well founded in fact.   The plaintiff on cross-examination testified as follows:

"*Q*. Did you listen when you started over the crossing—did you listen for any bell or whistle on the locomotive?

"*A*. I did listen.

"*Q*. Listen for what?

"*A*. For a whistle or a bell; always do.

"*Q*. Well, I know; now did you hear any?

"*A*. I didn't hear nothing.

*    *    *    *    *    *    *    *    *    *    *    *    *

"*Q.* But before you got on top of the track, did you look and listen? How did you do it—did you listen carefully?

"*A.* Why I generally listen as good as I can.

"*Q.* Not generally—what did you do on this occasion?

"*A.* Why a walk.

"*Q.* What did you do?

"*A.* Listened only, I didn't stop.

"*Q.* What did you listen for?

"*A.* For trains or anything; if I hear anything, why, of course I stopped.

"*Q.* Well, did you hear anything?

"*A.* No, sir; I didn't hear nothing until I got on top of the railroad track."

It is true there was other evidence tending to show that the bell was rung and the whistle was blown, but in our judgment the plaintiff's testimony raised a jury question whether the statutory signals had been given. The motions to nonsuit and to direct a verdict were therefore properly denied.

It is next contended that there should have been a nonsuit and a verdict directed because the plaintiff was guilty of contributory negligence.

But we think that question also was properly submitted to the jury for reasons which we will now state.

Chapter 278 of *Pamph. L.* 1910, *p.* 490, provides that: "In any action against any steam railroad company brought to recover damages for injuries or death occurring at any crossing of the right of way of such steam railroad company, where such company has not installed any safety gates, bell or device usually employed to warn and protect the traveling public at such crossing, which injuries or death are alleged to be due to the negligence of said railroad company or its agents, the plaintiff in such action shall not be non-suited on the ground of contributory negligence on his own part or on the part of the person for whom such suit is brought, but in all such cases it shall be left to the jury to determine whether the person injured or killed was exercising due and reasonable care under the conditions existing at said crossing at the time of such injury or death, and if the

jury shall determine that the person injured or killed was not exercising due and reasonable care under the conditions existing at the said crossing at the time of such injury or death, the verdict shall be against the plaintiff and in favor of the defendant."

The crossing in question was of the identical character described in that statute. The provisions of the act are, therefore, controlling in this case unless, as is urged by the defendant, the enactment is unconstitutional.

The defendant first argues that it violates article 4, section 7, paragraph 4, of the constitution of New Jersey which provides that: "Every law shall embrace but one object, and that shall be expressed in the title."

We think it does not. The title is: "An act concerning the liability of railroads for injury to persons or property caused by running cars across public streets and highways, at which crossings no safety gates, bell or other device to give warning to the traveling public shall have been installed."

The sole object of the statute was to provide that in suits for injury or death occurring at a grade crossing where the railroad had not installed safety gates, bell or usual safety device, the plaintiff should not be nonsuited on the ground of contributory negligence, but the question whether the plaintiff or decedent exercised reasonable care, under the conditions existing at the crossing at the time, should be left to the jury. Clearly that object was within the purview of the title.

It is next contended that the statute violates that clause of article 1, paragraph 7, of the constitution of New Jersey, which provides that "the right of trial by jury shall remain inviolate."

Counsel do not point out, nor do we perceive, how or in what manner the act violates that provision. It does not deprive the railroad company of a jury trial, nor does it deprive it of any pre-existing right to have any question arising at such trial submitted to the jury.

What it does do is to require the trial judges, as a matter of procedure, to submit the question of contributory negligence to the jury. It is true that theretofore in this jurisdiction in this class of cases, whenever the proof, measured by certain rules established by judicial decision, clearly showed contributory negligence, the trial judge was required to nonsuit the plaintiff. But that rule is not universal in this country. It is denied or modified in several jurisdictions, notably in those states where the comparative negligence rule has been adopted. But even regarding it as a rule of the common law, the right to a nonsuit upon the ground of contributory negligence is not intrenched behind any constitutional provision, nor was it originally created by legislative action. It was a rule established by the courts. Now we have held in effect that common law defences may be modified or even abolished by the legislative power, where, as here, the cause of action arose after the legislative provision became effective. *Sexton* v. *Newark District Telephone Co.*, 84 *N. J. L.* 85; *affirmed*, 86 *Id.* 701. Mr. Justice Van Devanter, speaking for the United States Supreme Court in *Second Employers' Liability Cases*, 223 *U. S.* 1, said: "A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will ` * * * of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."

Our Supreme Court has sustained the constitutionality of the Employers' Liability act (*Pamph. L.* 1909, *p.* 114), which act, as appears from the opinion, regulated common law defences of the employers. *Quigley* v. *Lehigh Valley Railroad Co.*, 80 *N. J. L.* 486. This court in *Brown* v. *Erie Railroad Co.*, ante *p.* 487, sustained and applied chapter 35 of *Pamph. L.* 1909, *p.* 54, and chapter 96 of *Pamph. L.* 1909, *p.* 137,

both somewhat similar in purpose and effect to the statute now under consideration, and no suggestion was made that they were beyond the power of the legislature to enact.

*In re Opinion of Justices* (*Mass.*), 96 *N. E. Rep.* 308, it was said: "The rules relating to contributory negligence and assumption of risk and effect of negligence by a fellow servant having been established by the courts and not by the constitution, the legislature may change or repeal them as defences, as in its wisdom it deems best for the welfare of the commonwealth."

So, too, we think the rules relating to nonsuiting the plaintiff in an action to recover for injuries or death of a traveler at an unguarded grade highway crossing, having been established by the courts and not by the constitution, the legislature may change them by providing that the plaintiff shall not be nonsuited on the ground of contributory negligence and that it shall be left to the jury to determine whether the plaintiff or decedent exercised reasonable care under the conditions existing at the crossing at the time of such injury or death.

We therefore conclude that the objections urged against the statute in question are without merit in law.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, JJ.    15.

*For reversal*—None.