The appellee, plaintiff below, recovered a judgment in the Superior Court of Baltimore City against the appellant, and this is the defendant's appeal. The suit was brought under the Federal Employers' Liability Act, approved April 22, 1908,* to recover damages for the death of Marcellus F. Owens, who was injured by the alleged negligence of the defendant, while he was in its employ, and died as the result of said injury. The first section of that Act provides:
 "That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents, and if none, then to the next of kin dependent upon such employee, *Page 3 
for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."
The declaration contained two counts. In the first count it was alleged "on the 2nd day of July, 1915, Marcellus F. Owens, the deceased aforesaid, and the husband of the said equitable plaintiff Dora Owens, and the father of the said equitable plaintiffs, Sylvia L. Owens, Gilbert Owens and Franklin Owens, was and for a number of years last preceding said date, had been employed by and engaged in the service of said defendant corporation, as a blacksmith or mechanic in the repair works and shops of the defendant, engaged in work upon the cars and instrumentalities used by it in interstate commerce as hereinbefore and hereinafter described; that on the said 2nd day of July, 1915, the said Marcellus F. Owens was employed, engaged and acting in the service of the defendant as a blacksmith or mechanic in the performance of his work upon the car and instrumentalities used by the defendant in its interstate commerce aforesaid between the State of Maryland and the District of Columbia, and within the jurisdiction of the United States of America hereinafter referred to." At the conclusion of the evidence for the plaintiff, the defendant submitted several prayers by which the Court was asked to withdraw the case from the consideration of the jury upon various grounds. The same questions as to the plaintiff's right to recover were raised by the defendant's special exceptions filed to granting of the plaintiff's prayers. These prayers and special exceptions were overruled by the Court. The rulings on the prayers and special exceptions constitute the only bill of exceptions in the record. These rulings present several important questions as to the plaintiff's right to maintain the suit under the Act. But in the view we take of the case only one of *Page 4 
these questions need be considered. That question is this: Did the plaintiff offer any legally sufficient evidence tending to show that Marcellus F. Owens was injured while he was employed in interstate commerce within the meaning of the Federal Employers' Liability Act? Upon the substantial and controlling facts, which are few and simple, there is no conflict in the evidence, and these facts are here stated.
The defendant is a common carrier, and owns and operates an electric railroad which runs from Baltimore City, Maryland, to and into the City of Washington, in the District of Columbia, and also from Baltimore City to Annapolis, Maryland. It is engaged in both an interstate and intrastate transportation. The branch line to Annapolis connects with the main line at Annapolis Junction where the company's repair shops are located. Marcellus F. Owens was in the employ of the defendant working as a helper in the blacksmith shop at this place. There were four persons employed in this blacksmith shop, viz., Robert F. Bryant and Arthur T. Andrews, both blacksmiths, and William Lowman and Marcellus F. Owens as their respective helpers. About a year and half before Owens was injured Robert F. Bryant brought to the shop an old army pistol. This old pistol was used in the hunting of rabbits near the shops, and was at times discharged about the shops for amusement or sport. It was kept in a locker in the shop in which Bryant and Lowman kept their clothes and tools. Early in the afternoon of July 2d 1915, William Lowman took the old pistol, which was loaded with powder and paper wadding, from the locker intending to discharge it either for amusement or to frighten some one about the works. When he was at or near the door of the blacksmith shop the pistol was accidentally discharged and the load entered the right thigh of Owens, who was standing near by at the time. The wound was washed at the shop and Owens went home, and that evening he consulted Dr. Thomas W. Linthicum, who was called as a witness and testified: "That on July 2d 1915, Marcellus F. Owens was *Page 5 
brought to his office about eight o'clock in the evening suffering from a gun shot wound in the right thigh. The hole at the entrance of the wound was about as large as a half dollar, ragged and torn. He dressed it. Some one had attempted to dress it before and had removed some of the debris. There was not a bullet in the pistol, but it was loaded with hair or dirt or packing of some kind. The wound was blackened as if a powder wound. He was burned through his clothes. It was deep and went through nearly all the muscles, practically to the bone. He removed some particles resembling hair. Owens stated to him that it was packing from an old refrigerator. He said that was what the pistol was loaded with. He removed from the wound a lot of hair that looked like packing, although he had never seen packing of a refrigerator. He saw Owens again July 3rd, and every day until the day of his death, on July 9th, at the University of Maryland Hospital. He thinks he died from the effects of this wound."
It was essential to the plaintiff's right to recover to prove that at the time the deceased was injured he was employed in interstate commerce work. Howard v. Ill. C.R. Co.,207 U.S. 492; Osborne v. Gray, 241 U.S. 16; Ill. C.R. Co. v.Behrens, 233 U.S. 473; Minn. St. L.R. Co. v. Winters,242 U.S. 353.
In what particular service was Owens engaged on the day he was injured? Was it interstate or intrastate commerce? The record is entirely silent. The evidence of the character of work done by him is found in the testimony of Robert F. Bryant as follows: Q. What kind of work did you do in the shop? A. Blacksmithing. Q. You did it all? A. No; Mr. Andrews, he had a helper. Q. I don't mean you personnally, but in your shop, you four men did all the repairs on all the cars of the defendant? A. Doing repairs. Q. That was the only blacksmith shop out there in those works? A. Yes, sir. Q. This railroad line runs from the District of Columbia over to Baltimore? A. I rode on it that far. Yes. Whether he was employed on the day he was injured *Page 6 
in work on cars used in intrastate service — on the Annapolis division, — or in repairing cars used on the interstate division, or working on cars used indiscriminately in both kinds of transportation is not shown. The evidence fails to show that at the time he was injured he was employed in interstate commerce, and the case should not have been submitted to the jury.
In Ill. C.R. Co. v. Behrens, Admr., 233 U.S. 473, the Court said: "The facts shown in the certificate are these: The intestate was in the service of the railroad company as a member of a crew attached to a switch engine operated exclusively within the City of New Orleans. He was the fireman, and came to his death, while at his post of duty, through a head-on collision. The general work of the crew consisted in moving cars from one point to another within the city over the company's tracks and other connecting tracks. Sometimes the cars were loaded, at other times empty, and at still other times some were loaded and others empty. When loaded the freight in them was at times destined from within to without the state or vice versa; at other times was moving only between points within the State, and at still other times was of both classes. When the cars were empty the purpose was usually to take them where they were to be loaded or away from where they had been unloaded. And oftentimes, following the movement of cars, loaded or empty, to a given point, other cars were gathered up and taken or started elsewhere. In short, the crew handled interstate and intrastate traffic indiscriminately, frequently moving both at once and at times turning directly from one to the other. At the time of the collision the crew was moving several cars loaded with freight which was wholly intrastate, and upon completing that movement was to have gathered up and taken to other points several other cars as a step or link in their transportation to various destinations within and without the State. The question of law upon which the Circuit Court of Appeals desires instruction is *Page 7 
whether, upon these facts, it can be said that the intestate, at the time of his fatal injury, was employed in interstate commerce within the meaning of the employers' liability act.
"Considering the status of the railroad as a highway for both interstate and intrastate commerce, the interdependence of the two classes of traffic in point of movement and safety, the practical difficulty in separating or dividing the general work of the switching crew, and the nature and extent of the power confided to Congress by the commerce clause of the Constitution, we entertain no doubt that the liability of the carrier for injuries suffered by a member of the crew in the course of its general work was subject to regulation by Congress, whether the particular service being performed at the time of the injury, isolatedly considered, was in interstate or intrastate commerce.Baltimore O.R.R. Co. v. Interstate Commerce Commission,221 U.S. 612, 618; Southern R.R. Co. v. United States,222 U.S. 20, 26; Second Employers' Liability Cases (Mondou v. NewYork, N.H. H.R. Co.), 223 U.S. 1; Interstate CommerceCommission v. Goodrich Transit Co., 224 U.S. 194, 213;Minnesota Rate Cases (Simpson v. Shepard), 230 U.S. 352, 432. The decision in Employers' Liability Cases (Howard v.Illinois C.R. Co.), 207 U.S. 463, is not to the contrary, for the Act of June 11, 1906 (34 Stat. at L. 232, Chap. 3073, U.S. Comp. Stat. Supp. 1911, p. 1316) there pronounced invalid, attempted to regulate the liability of every carrier in interstate commerce, whether by railroad or otherwise, for any injury to any employee, even though his employment had no connection whatever with interstate commerce.
"Passing from the question of power to that of its exercise, we find that the controlling provision in the Act of April 22, 1908, reads as follows: `That every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or *Page 8 
her personal representative, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.' Giving to the words `suffering injury while he is employed by such carrier in such commerce' their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce. The act was so construed inPedersen v. Delaware, L. W.R. Co., 229 U.S. 147. It was there said: `There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employee is employed by the carrier in such commerce.' Again: `The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?' And a like view is shown in other cases. Second Employers' Liability Cases
(Mondau v. New York, N.H. H.R. Co.), 223 U.S. 1; SeaboardAir Line R. Co. v. Moore, 228 U.S. 433; St. Louis S.F. T.R.Co. v. Seale, 229 U.S. 156, 158; North Caroline R. Co. v.Zachary, 232 U.S. 248, 256; Grand Truck Western R.C. v.Lindsay, 233 U.S. 42.
"Here at the time of the fatal injury the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected upon the completion of that task, to engage in another which would have been a part of interstate commerce, is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury."
JUDGE DOBLER, who presided at the trial below, followed the ruling of this Court in B. O.R.R. Co. v. Branson, *Page 9 128 Md. 678. In that case Branson suffered injury in the shops at Cumberland while engaged in painting engines and cars used in both interstate and intrastate commerce, and this Court allowed a recovery upon the ground that the work of painting these engines and cars had a reasonable and substantial relation to interstate commerce. But that case has been reversed by the Supreme Court of the United States (B. O.R.R. Co. v. Branson, 242 U.S. 623) apparently upon the sole ground that Branson was not engaged in interstate commerce at the time he suffered the injury. The Court cited in support of its conclusion Delaware, Lackawanna Western R.R. Co. v. Yurkonis, 238 U.S. 439; Shanks v.Delaware, Lackawanna Western R.R. Co., 239 U.S. 556; ChicagoBurlington Quincy R.R. Co. v. Harrington, 241 U.S. 177, 180.
For the reasons stated the judgment will be reversed and as there can be no recovery in this action a new trial will not be awarded.
Judgment reversed, without awarding a new trial.
* 35 Stat. at L. 65, ch. 149, U.S. Comp. Stat. Supp. 1911, p. 1322. *Page 10