PHŒNIX PORTLAND CEMENT CO. v. BALTIMORE & O. R. CO.

(District Court, E. D. Pennsylvania. February 6, 1920.)

No. 5484.

CARRIERS ☞41—DELIVERY OF COAL ON SHIPPING ORDERS TO CONDUCTOR HELD NOT TO CREATE LIABILITY OF CARRIER WHERE RAILWAY COMPANY CONFISCATED COAL.

Loading coal on cars of defendant railroad company by a coal company at its mine, and giving the train conductor shipping orders directing consignment of the cars to plaintiff at the scale station, to which only the cars were taken on the shipping orders, and there consigned and waybills issued, *held* not a delivery of the coal to defendant as carrier for plaintiff, where defendant had a contract with the coal company for fuel coal giving it the right of priority over all other orders, and under which, pursuant to its terms, defendant took the coal for its own use, notifying the coal company of its action.

At Law. Action by the Phœnix Portland Cement Company against the Baltimore & Ohio Railroad Company. On motion by plaintiff for new trial. Denied.

Paul C. Hamlin, Samuel D. Matlack, and William Jay Turner, all of Philadelphia, Pa., for plaintiff.

George H. Stein and W. B. Linn, both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The plaintiff's statement of claim averred that on April 1, 1916, it entered into a written contract with the Piedmont & George's Creek Coal Company, of Frostburg, Md., for the sale to plaintiff of 25,000 tons of coal, to be delivered f. o. b. cars at the mines, consigned to plaintiff at Nazareth, Pa., shipments to be made in equal monthly proportions during the year, beginning April 1, 1916, and ending March 31, 1917; that the coal company, in part performance of the agreement, from time to time between September 10, 1916, and November 22, 1916, caused to be delivered to

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

defendant as a common carrier and loaded upon cars supplied by defendant at the New York mine in West Virginia 44 carloads, containing approximately 1,892.51 tons of coal consigned to plaintiff, Nazareth, Pa., there to be delivered by defendant to plaintiff; that the coal so delivered, consigned to plaintiff, became the property of plaintiff, and it was the duty of defendant as a common carrier to transport it to plaintiff at destination, in accordance with the terms of the consignment; that defendant did not deliver the coal, but, on the contrary, it was wholly confiscated by defendant while in course of transportation, and the coal was reconsigned by defendant to defendant for the latter's own use, all before the issuance of any bills of lading therefor. The plaintiff sues for trover and conversion, claiming damages for the value of the coal, exemplary damages, and damages for compensation for delay.

The defendant in its affidavit of defense denied that the coal company caused the coal to be delivered to defendant as a common carrier, denied that it accepted the coal as consigned to plaintiff, denied that it was received for transportation by it to plaintiff, and averred that the coal was taken and received by it under a contract by which it purchased from the McGraw Coal Company certain coal, to be mined by that company, and to be taken by defendant from the New York mine of the McGraw Coal Company, when mined by that company. It averred that none of the coal was accepted for transportation.

The plaintiff offered in evidence the contract, dated April 1, 1916, under which the coal company agreed to sell not to exceed 25,000 gross tons nor less than 24,000 gross tons f. o. b. cars at the mines to go forward in equal monthly proportions, the contract to expire March 31, 1917, to be shipped to plaintiff at Nazareth, Pa. The New York mine, from which the coal was to be shipped, was owned by the McGraw Coal Company.

The plaintiff proved the loading upon the cars upon the dates set out in the statement of claim of the quantity of coal as alleged in the statement of claim, and offered in evidence 44 of what the plaintiff termed "car conductor's cards," which were shipping orders of the McGraw Coal Company from the New York mine, with directions to weigh and waybill at Keyser, W. Va., scale station, via Baltimore & Ohio; the operator and consignor named being the McGraw Coal Company, and the consignee named the Phœnix Portland Cement Company. The shipping order contained the following instructions to the shipper:

"Shipper is requested to fill out and sign order (tacking it on loaded car) which is an acknowledgment of responsibility for instructions given. Conductor will move car on shipping order to scale station indicated, where agent will take up and issue waybill to accompany car to waybilled destination. Shipping order will not be honored for movement of car beyond scale station."

These shipping orders were delivered to the conductor. The defendant's agent at the scale station struck out of these shipping orders the name "Phœnix Portland Cement Co.," after the word "Consignee," and inserted "B. & O. R. R.," and struck out, after the word "Desti-

nation," the name "Nazareth, Pa.," and inserted "Keyser, W. V." The McGraw Coal Company thereupon received from the defendant notices in the following form:

"The Baltimore & Ohio Railroad Company.

"Statement of coal or coke confiscated:

"Grafton, W. Va.,      1916.

"McGraw Coal Company:

· "Confirming my message of        the following cars of coal (or coke) from your mine (or oven) will not go forward as originally consigned, as they were confiscated for this company's use, due to failure to protect fuel."

Then followed the car numbers, the name of the consignee, and destination as contained in the shipping order, and after each such item the statement, "Reconsigned company use—Keyser, W. Va."

No waybill, bill of lading, or other documentary evidence of a contract of transportation to the plaintiff was at any time issued by the defendant, and no evidence was offered by the plaintiff in support of its claim of the contract to carry the coal to the plaintiff, except the shipping order, or "car conductor's card"; the plaintiff's contention being that the fact that the cars left the mine accompanied by the shipping orders constituted an acceptance by the conductor on the part of the company of the coal for transportation under the terms set out in the shipping orders. The plaintiff, having offered evidence of the market value of the coal, rested.

The defendant thereupon produced evidence to show that on July 1, 1916, the defendant placed an order with the McGraw Coal Company, Frostburg, Md., accepted by it, for shipment of an approximate average of 300 net tons each working day of coal from the New York mine. The order contained the following provisions:

"*Priority of Shipment.*—That we shall have preference in loading from the mines, not only to the extent of the daily tonnage, but likewise to cover any shortage in filling the order for previous days, that has been brought about by failure to operate the mine. The obligation to make up such shortage may be waived by the railroad, in which event it will not be compelled to receive same.

"*Consignment.*—That the shipments will be consigned to Keyser, West Virginia, in care of Mr. M. H. Cahill, superintendent, or to such other point or points as you may be directed from time to time.

"*Confiscations.*—That, if we shall be forced to confiscate any of your coal consigned commercially, settlement for same, to the extent of the tonnage you are short in shipments on the order for the current month will be made at the same price as that to be paid for similar kind and size of coal on this order. * * *

"*Period.*—This order is to be effective at once, and continue in force until July 1, 1917."

The defendant proved by its car distribution manager that during the period in question there was a shortage of coal cars, in that the available cars were not sufficient for the full capacity of the mines in the district. The defendant also offered in evidence rule 7 of its car distribution rules, on file at that time with the Interstate Commerce Commission, as follows:

"Cars for B. & O. System fuel supply, cars of foreign railroads assigned for fuel supply of railroads assigning them, and individual cars assigned by

owners to specified mines for loading, are placed at mines of shipper for whom they are intended, and are counted as part of equipment available for distribution, except that, when number of such cars equals or exceeds percentage to which shipper is entitled, such shipper is given all such assigned cars and his mine or mines eliminated from percentage for that day; the unassigned cars to which he would otherwise be entitled are divided among other shippers on basis of revised percentages."

The defendant showed that in the distribution of cars during the period in question 6 cars was about the capacity of the New York mine; that if they were loaded on a commercial basis exclusively they would be entitled only to their pro rata share of cars available for percentage distribution, but that under rule 7 they were entitled to enough cars to load their entire quota with Baltimore & Ohio Railroad fuel, which would be 6 cars, with a capacity of 300 tons, on a 50-ton basis. This being the state of the testimony, a verdict was directed for the defendant; my opinion being that, under all the evidence in the case, no title to the coal had passed to the plaintiff.

There are circumstances in this case under which, in my opinion, the rule as to passing of title upon delivery to a common carrier is rendered inapplicable. The carrier had a contract with the mine for the delivery to it for its fuel purposes of 300 tons of coal per day, being the full capacity of the mine, for which it was to have priority in delivery over all other purchasers.

The contract recognized the right of the defendant, in case of default on the part of the McGraw Coal Company, to confiscate any coal commercially consigned. There being a car shortage, the defendant was obliged not to supply the mine with cars in excess of the mine's pro rata share of cars, except that under its car distribution rules, in the case of cars assigned for the railroad company's fuel supply, it was at liberty to furnish the entire number necessary to load the cars with its daily quota of coal.

Counsel for the plaintiff appears to have left out of sight entirely the dual relation between the defendant and the McGraw Coal Company; that is, in addition to the relation of shipper and carrier, the contract relation which was binding on both parties equally under the fuel contract. Under that contract the defendant did not assume any obligation as carrier until the McGraw Coal Company's obligations thereunder were fulfilled. The facts, therefore, that the coal was loaded upon the defendant's cars at the mine, that the McGraw Coal Company filled out and delivered to the conductor the shipping orders, and that the cars were then moved by the conductor were not evidence of acceptance of the coal by the defendant for carriage to the plaintiff named in the shipping order as consignee. The shipping order provides that—

"Conductor will move car on shipping order to scale station indicated, where agent will take up and issue way bill to accompany car to waybilled destination. Shipping order will not be honored for movement of car beyond scale station."

Under the very terms of this shipping order, no responsibility was placed upon the defendant as carrier for movement of the car beyond

the scale station, and the conductor is not therein made the agent of the defendant to place any responsibility upon it beyond movement to the scale station, "where agent will take up and issue waybill to accompany car to waybilled destination."

As no waybill was issued by the agent for transportation to the plaintiff at Nazareth, and the conductor was not given authority to move cars, except as provided in the shipping order, to the scale station, there was no act of any one having authority to bind the defendant which constituted an acceptance of the coal for transportation to the plaintiff. The McGraw Coal Company could not, in violation of its contract with the defendant, bind the defendant by its delivery of coal with directions to ship to the plaintiff, until it had supplied to the defendant on that day a quantity up to the 300 tons called for in the contract. This would be so, whether there was a car shortage, and the defendant's car distribution regulations were in effect on account of car shortage or not. The defendant had a right to take the coal up to its daily tonnage before recognizing any shipping instructions to transport to other parties.

As the whole case turned on the question of acceptance for transportation and waybilling to the plaintiff, and there was no evidence of such acceptance, I perceive no tenable ground for granting a new trial.

The motion for new trial is denied.