Opinion by
 

 Rhodes, J.,
 

 In this workmen’s compensation case claimant, on
 
 *136
 
 behalf of herself and minor children, has appealed from the disallowance of her claim for compensation and the judgment entered for defendant. The only question involved is whether claimant’s husband was engaged in interstate transportation within the meaning of the Federal Employers’ Liability Act, 45 U. S. C. A. §51 et seq., at the time he was accidentally killed in the course of his employment with defendant. We agree with the referee, the board, and the court below that he was. The facts are not in dispute; the question for decision is one of law
 
 (Philadelphia & Reading Railway Co. v. Hancock,
 
 253 U. S. 284, 285, 40 S. Ct. 512, 64 L. Ed. 907) ; and the decisions of the Supreme Court of the United States are controlling
 
 (Mayers v. Union Railroad Co.,
 
 256 Pa. 474, 475, 100 A. 967).
 

 We shall briefly state the material facts. Claimant’s husband was employed as a car inspector by defendant at its railroad yards in Brockway, Pa.; his duties included inspecting and repairing cars. He was accidentally killed while in the .course ;of his employment on October 19, 1938. In defendant’s yards at Brockway there were at the time three parallel tracks running east and west. These tracks were known as the upper scale track, the lower scale track, and the main track. The lower scale track was next to and south of ¡the main track; the upper scale track was next to the lower scale track. On the day deceased met his death there were thirty-three cars on the upper scale track, which had been loaded with coal at mines owned by defendant in Pennsylvania and then brought to the Brockway yard by a train crew, where they arrived on the evening of October 18, 1938. They were then placed on the upper scale track, which was a receiving track, for the purpose of being weighed and inspected; and they were scheduled to move out to their destinations the next morning about 10:45. On the morning of the nineteenth, deceased, after reaching the yard, inspected
 
 *137
 
 cars on the lower scale track, and then proceeded to the upper scale track. About 8 A.M., while inspecting these cars preparatory to their leaving the yard, he was killed apparently by a moving train on the lower track. There was no eyewitness to the accident, and no engine had been attached to the cars at the time. A blue flag placed at the end of the cars remained standing at the time his body was found, and this indicated that he had not finished inspecting the cars in question. On October 18th, the day prior to the accident, the thirty-three cars had been weighed and billed at the Brockway yards. Defendant was both shipper and consignee, and therefore coal manifests rather than bills of lading were used. The manifests, one for each car, were all dated October 18, 1938. They stated, among other things, the car initials and numbers, place of origin, and points of destination. All the cars were routed through New York state. Twenty-eight cars were to be delivered to points in that state. The remaining five cars were to go to Susquehanna, Pa., and were to be moved from Brockway to the Pennsylvania —New York border, thence eastward in the state of New York for approximately 200 miles, where they would reenter the state of Pennsylvania in order to arrive at their destination. Three of the twenty-eight cars consigned to points in New York state were found upon inspection to be crippled, and thus never left the Brockway yards. For the same reason a fourth car was set off at Johnsonburg, Pa. Ninety-five per cent of the traffic in the Brockway yards was at the time interstate in character.
 

 If, when the accident happened, deceased was engaged in interstate transportation within the meaning of the Federal Employers’ Liability Act, 45 U. S. C. A. §51 et seq., the Pennsylvania Workmen’s Compensation Act, 77 PS §1 et seq., does not apply, for the federal
 
 *138
 
 act is exclusive in its operation.
 
 [1]
 

 Second Employers’ Liability Cases, 223,
 
 U. S. 1, 55, 32 S. Ct. 169, 56 L. Ed. 327;
 
 Velia v. Reading Co.,
 
 124 Pa. Superior Ct. 199, 202, 187 A. 495. On the other hand, if the accidental death occurred outside of interstate transportation, the federal act is without application, and our state compensation statute is controlling.
 
 Wabash Railroad Co. v. Hayes,
 
 234 U. S. 86, 89, 34 S. Ct. 729, 58 L. Ed. 1226.
 

 In our opinion, the facts do not admit of any other conclusion than that deceased was engaged in interstate transportation at the time he was killed, or in work so closely related to such transportation as to he practically a part of it. See
 
 Chicago & North Western Railway Co. v. Bolle,
 
 284 U. S. 74, 78, 52 S. Ct. 59, 76 L. Ed. 173. The character of the thirty-three cars which deceased was to inspect had been determined before he began his duties in connection therewith as the manifests disclose. The cars had been assembled and had been devoted to a particular kind of traffic.
 
 [2]
 
 Prior to the accident they had been designated as units of interstate commerce, and were engaged in a movement of interstate shipments. The duties which deceased had been assigned to perform were connected with that movement directly and immediately. Inspection was an essential step in the transportation of the coal to ultimate destinations in or through another state
 
 (St. Louis, San Francisco & Texas Railway Co. v. Seale
 
 
 *139
 

 et al.,
 
 229 U. S. 156, 161, 33 S. Ct. 651, 57 L. Ed. 1129;
 
 Philadelphia & Reading Railway Co. v. Hancock,
 
 supra), and the yard tracks were as much an interstate instrumentality as the main tracks
 
 (Jennings v. Pittsburgh & Lake Erie Railroad Co.,
 
 136 Pa. Superior Ct. 16, 19, 7 A. 2d 96).
 

 As these cars, in actual use, had a definite interstate character, they gave that character to those employed upon them.
 
 Industrial Accident Commission et al. v. Davis,
 
 259 U. S. 182, 187, 42 S. Ct. 489, 66 L. Ed. 888. The character of the employment is not to be determined by the mere physical position of the employee at the moment of injury, but by the nature of the work he was doing and its immediate purpose and effect. If he had been injured in the course of his employment while going to cars assigned to interstate transportation, the federal act would apply, although the accident occurred prior to the coupling of the engine to the cars.
 
 New York Central & Hudson River Railroad Co. v. Carr,
 
 238 U. S. 260, 263, 35 S. Ct. 780, 59 L. Ed. 1298. Deceased’s particular acts were for the immediate purpose of facilitating an assembled movement in interstate transportation and to secure its safety. His work was not a matter of indifference to that traffic. It was a necessary incident thereto, and it meets the test of direct and immediate relation to interstate transportation.
 
 Kinzell v. Chicago, Milwaukee & St. Paul Railway Co.,
 
 250 U. S. 130, 133, 39 S. Ct. 412, 63 L. Ed. 893.
 

 In
 
 Philadelphia & Reading Railway Co. v. Hancock,
 
 supra, the work of the deceased was confined to Pennsylvania. It related solely to transporting coal from the mines. But the cars of coal handled by his crew were to go beyond the state, as shown by the instruction cards or memoranda delivered to the conductor at the mine. The cars were moved from the mine to a yard where the deceased’s duties terminated. At the yard the cars were gathered into a train, and thence
 
 *140
 
 moved some miles to a weighing station, there to .be inspected, weighed, and billed to specific consignees in another state. In holding that the case was governed by the federal act, the United States Supreme Court said (253 U. S. 284, at page 286) : “The coal was in the course of transportation to another state when the cars left the mine. There was no interruption of the
 
 movement;
 
 it always continued towards points as originally intended. The determining circumstance is that the shipment was but a step in the transportation of the coal to real and ultimate destinations in another state.”
 

 The circumstance that at the time of deceased’s accident one would be unable to forecast whether on inspection some of these cars might be rejected does not alter their character at that time as instruments of interstate transportation to which they had been definitely assigned.
 
 Louisville & Nashville Railroad Co. v. Jolly’s Adm’x,
 
 232 Ky. 702, 23 S. W. 2d 564, 570, certiorari denied, 282 U. S. 847, 51 S. Ct. 26, 75 L. Ed. 751.
 

 The character of the instrumentality of transportation having been determined, the fact that the cars were idle for a few hours during the night likewise did not remove them from interstate service.
 
 Miller v. Lehigh Valley Railroad Co.,
 
 138 Pa. Superior Ct. 8, 14, 9 A. 2d 917. Continuity of movement has never been held to be an essential requisite to the determination of the interstate character of the commerce.
 
 Herb v. Pitcairn et al.,
 
 306 Ill. App. 583, 29 N. E. 2d 543, 549. When deceased entered upon the inspection of the thirty-three cars on the upper scale track, that employment was in interstate transportation.
 
 [3]
 
 “Employ
 
 *141
 
 ment follows interstate transportation and begins when the workman, on a carrier’s premises, makes a forward move to serve in that traffic or employment and ends only after he has completely dissociated himself therefrom” :
 
 Koons et ux. v. Philadelphia, & Reading Ry. Co.,
 
 271 Pa. 468, at page 470, 114 A. 262, at page 263. See, also,
 
 Patterson, Adm’x, v. Pennsylvania R. R. Co.,
 
 284 Pa. 577, 580, 131 A. 484, certiorari denied, 270 U. S. 649, 46 S. Ct. 349, 70 L. Ed. 780. :The test is not, as claimant seems to contend, whether the work being done is static or dynamic.
 
 Rader v. Baltimore & Ohio Railroad Co.,
 
 7 cir., 108 F. 2d 980, 984, certiorari denied, 309 U. S. 682, 60 S. Ct. 722, 84 L. Ed. 1026.
 

 There are circumstances where equipment withdrawn for repairs may not partake of an interstate character because of the long duration of the withdrawal from use and the extent of the repairs. Examples of this line of cases are
 
 Minneapolis & St. Louis Railroad Co. v. Winters,
 
 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358;
 
 Industrial Accident Commission et al. v. Davis,
 
 supra;
 
 Schauffele v. Director General of Railroads,
 
 3 Cir., 276 F. 115, certiorari denied, 257 U. S. 661, 42 S. Ct. 270, 66 L. Ed. 422. But the facts in those cases are not analogous to the present situation.
 

 The determination of whether deceased was engaged
 
 *142
 
 in interstate transportation does not depend, as claimant argues, on whether defendant hauled this particular coal for hire, or whether, in this instance, the relationship of buyer and seller existed. That defendant was both shipper and consignee is of no particular significance. The Federal Employers’ Liability Act, 45 U. S. C. A. §51, provides in part:
 
 “Every common carrier
 
 by railroad while engaging in commerce between any of the several States......,” etc. (Italics supplied.) There can be no dispute that defendant is a common carrier, and bills of lading, rather than manifests, were not indispensable adjuncts.
 
 United States v. California,
 
 297 U. S. 175, 182, 56 S. Ct. 421, 80 L. Ed. 567. The actual nature of the commerce, not the presence of bills of lading or manifests, determines whether it is interstate in character.
 
 Railroad Commission of Louisiana et al. v. Texas & Pacific Railway Co. et al.,
 
 229 U. S. 336, 341, 33 S. Ct. 837, 57 L. Ed. 1215. Certainly, the service here involved was transportation between states. Even the movement of empty cars from one state to another is interstate transportation within the meaning of the act.
 
 North Carolina Railroad Co. v. Zachary, Adm’r,
 
 232 U. S. 248, 259, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159;
 
 Pennsylvania R. Co. v. Knox,
 
 3 Cir., 218 F. 748, 751.
 

 Claimant relies on
 
 Phoenix Portland Cement Co. v. Baltimore & Ohio Railroad Co.,
 
 263 F. 230, affirmed, 3 Cir., 269 F. 136, certiorari denied, 255 U. S. 574, 41 S. Ct. 376, 65 L. Ed. 792. That case is not helpful to claimant; it is not even a guide in the compensation field. There the plaintiff sued the railroad in assumpsit for coal allegedly delivered to the railroad for transportation to the plaintiff, but which the railroad failed to deliver. It was held that the delivery of the coal to the railroad at the mine was not a delivery to it as a carrier for the plaintiff, but rather that the railroad took the coal for its own use as it had a contract with
 
 *143
 
 the coal company giving it the right of priority over all other orders.
 

 Judgment is affirmed.
 

 [1]
 

 The Federal Employers’ Liability Act, 45 U. S. C. A. §51, in so far as material, provides: “Every common carrier by railroad while engaging in commerce between any of the several States or Territories ...... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ...... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier......”
 

 [2]
 

 In
 
 Salkeld v. Pennsylvania Railroad
 
 Company, 142 Pa. Superior Ct. 78, 15 A. 2d 501, the unassembled cars had no interstate character.
 

 [3]
 

 Among the eases which tend to support our conclusion that deceased at the time of his accidental death was engaged in interstate transportation are the following:
 

 
 *141
 

 Walsh v. New York, New Haven & Hartford Railroad, Co.,
 
 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327;
 
 St. Louis, San Francisco & Texas Railway Co. v. Seale et al.,
 
 229 U. S. 156, 161, 33 S. Ct. 651, 57 L. Ed. 1129;
 
 Sigler v. Pittsburgh & Lake Erie Railroad Co.,
 
 127 Pa. Superior Ct. 458, 193 A. 362;
 
 Riley v. Pennsylvania Railroad Co.,
 
 137 Pa. Superior Ct. 290, 8 A. 2d 448;
 
 McKay v. Monongahela Ry. Co.,
 
 3 Cir., 44 F. 2d 150;
 
 Rossi v. Pennsylvania R. Co.,
 
 115 N. J. Law 1, 178 A. 77, affirmed, 117 N. J. Law 148, 187 A. 144;
 
 Texas & New Orleans Railroad Co. v. Neill et al.
 
 (Tex. Civ. App.) 97 S. W. 2d 279, certiorari dismissed, 302 U. S. 645, 58 S. Ct. 118, 82 L. Ed. 501;
 
 Southern Ry. Co. v. Wilmouth,
 
 154 Va. 582, 153 S. E. 874, certiorari denied, 282 U. S. 878, 51 S. Ct. 81, 75 L. Ed. 775.