Opinion by
 

 Bhodes, J.,
 

 This is a workmen’s compensation case. The question raised on this appeal is whether the deceased, Thomas P. Nicholas, was engaged in interstate transportation at the time he was accidentally killed on September 13, 1937, in the course of his employment with defendant, or in work so closely related to such transportation as to be practically a part of it. See
 
 Chicago & North
 
 
 *310
 

 Western Ry. Co. v. Bolle,
 
 284 U. S. 74, 78, 52 S. Ct. 59, 76 L. Ed. 173;
 
 Chicago & Eastern Illinois R. Co. v. Industrial Commission of Illinois et al.,
 
 284 U. S. 296, 298, 52 S. Ct. 151, 76 L. Ed. 304, 77 A. L. R. 1367. If the nature of deceased’s employment meets these requirements redress is under the Federal Employers’ Liability Act, 45 U. S. C. A. §51 et seq.
 
 (Second Employers’ Liability Cases,
 
 223 U. S. 1, 55, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A., N. S., 44), but if the accident occurred while deceased was engaged in intrastate transportation or outside of interstate transportation our state workmen’s compensation laws control
 
 (Jordan v. Erie R. Co.,
 
 146 Pa. Superior Ct. 134, 138, 22 A. 2d 116).
 

 Claimant, twenty-nine years of age, is the daughter of deceased. On August 22, 1938, she filed a claim petition with the Workmen’s Compensation Board under our Workmen’s Compensation Act of 1915, as amended, 77 PS § 1 et seq. In September, 1938, as administratrix of the estate of Thomas F. Nicholas, she brought an action against defendant in the United States District Court for the State of New Jersey, seeking to recover damages for the death of deceased under the Federal Employers’ Liability Act, 45 U. S. C. A. § 51 et seq., and the Safety Appliance Act, 45 U. S. C. A. § 1 et seq. Claimant, in her claim petition and at the hearing before the referee, requested that the petition be held in abeyance until such time as the ’suit in the federal court was determined. Her request was denied. The referee found that deceased was engaged in intrastate transportation at the time of his death, and made an award for funeral expenses. He further found that there were no dependents who were entitled to compensation under our Workmen’s Compensation Act, 77 PS § 1 et seq. Claimant appealed to the board, and maintained that her remedy was under the . Federal Employers’ Liability Act, 45 U. S. C. A. § 51 et seq. The board affirmed the referee’s findings of fact, con
 
 *311
 
 elusions of law, and award for funeral expenses. Claimant then appealed to the court of common pleas which held, as a matter of law, that deceased was engaged in interstate transportation at the time of his death. From the judgment in its favor, defendant has appealed.
 

 The court below pertinently said: “The case presents the unusual features of an appeal by the person in whose favor an award has_ been made and of an insistence by the defendant upon being bound by the award. The explanation for this situation is that claimant has a suit pending before the federal courts to enforce a claim arising under the Federal Employers’ Liability Act and desires to prosecute that suit to judgment. Defendant probably courts our forum because there is no apparent dependency upon which a large workmen’s compensation award could be based.” Claimant’s dilemma is the result of trying to play safe by instituting an action in two different forums.
 

 A final judgment for compensation under our workmen’s compensation laws would be conclusive in the federal court, and could not be attacked collaterally by claimant.
 
 Chicago, Rock Island & Pacific Ry. Co. v. Schendel, Adm’r,
 
 270 U. S. 611, 46 S. Ct. 420, 70 L. Ed. 757, 53 A. L. R. 1265. A reversal of the award will not prevent defendant from raising the question here involved in the federal courts, as their decisions are controlling
 
 (Mayers v. Union R. Co.,
 
 256 Pa. 474, 475, 100 A. 967), and decisions of the state courts, while persuasive, are not binding upon them
 
 (Spokane, Portland & Seattle Ry. Co. v. Martin,
 
 9 Cir., 80 F. 2d 3122, 325).
 

 The undisputed facts are these: On September 13, 1937, and for some time prior thereto, deceased was in the employ of defendant as a member of a train crew. On that day he was a flagman on a freight train which contained nine cars and operated from East Penn Junction at Allentown, Pa., to Kutztown, Pa. One of the cars, containing wheat, was billed from Buffalo, N. Y.,
 
 *312
 
 .and consigned to Maeungie, Pa. The other cars were in intrastate service. Maeungie, the point of destination of the car of wheat, is on the Allen town-Kutztown run, and is a short distance beyond and west of Emmaus,
 
 Pa.;
 
 both towns are situated in Lehigh County. The Donaldson Iron Company is located at Emmaus. The train crew had standing instructions to do such intermill shifting operations at the private yards of the iron company as that company might require. When the train left East Penn Junction at Allentown on the morning of the day of the accident, the conductor in charge had received no instructions relative to any movement of cars at the yards of the iron company. On arrival at the iron company the train crew delivered two cars of coke, and the foreman of the iron company requested the train crew to move a car loaded with pipe from what was known as the “new dock” track to the “old dock” track and into the machine shop. For this shifting operation defendant assessed a charge in accordance with its tariff schedule. Due to the extreme curvature of the “old dock” track it was necessary to have twelve cars ahead of the engine in addition to the car to be placed in the machine shop. When the train arrived at the yard it was made up of seven cars, including the car destined for Maeungie from Buffalo. The seven cars, including the interstate car, and the engine and tender, remained intact. The entire train picked up additional cars standing in the yard of the iron company for the purpose of making, the shifting movement. While thus engaged,, deceased was killed as the train was picking up, for use as a pusher, an empty car located on the “new dock” track. After the accident the intermill movement of the car loaded with pipe was completed. The car of wheat was then taken to its destination at Maeungie, Pa.
 

 . .As the. facts are not in controversy, the nature of the employment is a question of law.
 
 Philadelphia & Reading Ry. Co. v. Hancock,
 
 253 U. S. 284, 285, 40 S. Ct.
 
 *313
 
 512, 64 L. Ed. 907;
 
 Niblett v. Pennsylvania
 
 R.
 
 Co.,
 
 146 Pa. Superior Ct. 587, 23 A. 2d 62.
 

 , It is a. recognized principle that if one of the cars of the train was interstate in character the entire train assumed an interstate character.
 
 Koons et ux. v. Philadelphia & Reading Ry. Co.,
 
 271 Pa. 468, 470, 114 A. 262. That deceased’s employment also extended to intrastate cars is, for present purposes, of no importance.
 
 Erie R. Co. v. Winfield,
 
 244 U. S. 170,. 173, 37 S. Ct. 556, 61 L. Ed. 1057. Contrary to appellant’s, apparent intimation, the fact that the train operated wholly within the State of Pennsylvania did not change the character of the shipment or the nature of deceased’s employment.
 
 New York Central & Hudson River R. Co. v. Carr,
 
 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298;
 
 Philadelphia & Reading Ry. Co. v. Hancock, supra Miller v. Lehigh Valley R. Co.,
 
 138 Pa. Superior Ct. 8, 14, 9 A. 2d 917.;
 
 Evans v. United States Railroad Administration et al.,
 
 191 App. Div. 704, 182 N. Y. S. 310. Service by one of several transportation carriers may be wholly , within one state in relation to interstate shipments, but it is still a part of interstate transportation.
 

 Appellant contends that the intermill shifting of the cars at the yard of the iron company removed deceased from interstate transportation, and that, therefore, our Workmen’s Compensation Act,, 77 PS §1 et seq., governs. We do not agree.
 

 It is the established rule that the. status of an employee with respect to interstate commerce where the service is separable is tested by the work that he is actually performing at the time
 
 (Illinois Central R. Co. v. Behrens,
 
 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051), but frequently cases arise where the employment is concerned at the same time with both interstate and intrastate transportation and the two are not separable
 
 (Elder v. Pennsylvania Railroad Co.,
 
 118 Pa. Superior Ct. 137, 143, 180 A. 183). “As the federal law supersedes the state law, so do acts done thereunder, and
 
 *314
 
 where intra- and interstate acts are mingled, or at times alternate there is no separation. The interstate feature predominates and by it must the questioned act be judged. ‘To separate duties by moments of time or particular incidents of its exertion would be to destroy its unity......’:
 
 Phila. & Reading Ry. Co. v. Di Donato
 
 [256 U. S. 327, 331, 41 S. Ct. 516, 65 L. Ed. 955]”:
 
 Koons et ux. v. Philadelphia & Reading Ry. Co.,
 
 supra, 271 Pa. 468, at page 470, 114 A. 262, at page 263.
 

 A car being moved from a point in one state to a point in another is impressed with the character of interstate transportation which will follow and attend the shipment until the transit ceases.
 
 Rich v. St. Louis & San Francisco R. Co.,
 
 166 Mo. App. 379, 148 S. W. 1011, 1012. “Employment follows interstate transportation and begins when the workman, on a carrier's premises, makes a forward move to serve in that traffic or employment and ends only after he has completely dissociated himself therefrom”:
 
 Koons et ux. v. Philadelphia & Reading Ry. Co.,
 
 supra, 271 Pa. 468, at page 470, 114 A. 262, at page 263;
 
 Miller v. Lehigh Valley R. Co.,
 
 supra, p. 14. In the instant case there was a movement of interstate shipment from a point outside the state to an ultimate destination within the state— Macungie, Pa. We have no doubt that the train when it left Allentown was an interstate train, and that deceased who was employed thereon was then engaged in interstate transportation. The intermill shifting of the car of pipe at the yard of the iron company by the interstate train and its crew was merely incidental to the main forward movement, which was interstate transportation. Deceased at no time dissociated himself from the employment in which he was engaged when the train left Allentown. The switching operation which at all times involved the interstate car cannot be construed as a suspension of that employment, because it requires more than a temporary interruption of interstate transportation to change the character of the com
 
 *315
 
 merce involved.
 
 [1]
 

 Dunkell Estate v. Pennsylvania R. Co.,
 
 106 Pa. Superior Ct. 356, 358, 359, 163 A. 70, certiorari denied 289 U. S. 727, 53 S. Ct. 527, 77 L. Ed. 1476. We agree with the court below that the entire train and its movements must be classified as interstate, and that the switching operation, in which the interstate car was used as a part of the entire train involved, must be so characterized also. The mere fact that the switching operation which engaged the interstate train and its crew for a very short period of time was for the purpose of moving a car of pipe, in the manner previously described, could not change the interstate character of the train on which deceased was killed. The forward interstate movement may have been temporarily interrupted, but it was not thereby terminated. The interstate trip was not at an end, and the ultimate point of destination — Macungie, Pa., had not been reached. As the interstate feature predominated the essential nature of the transportation at all times while the train was enroute was interstate. We do not think that the facts are susceptible of any other conclusion than that the movement of the train from Allentown to Macungie must be treated as a single movement in interstate transportation and not as a series of successive unrelated tasks. A different conclusion would ignore both reason and authority.
 

 We find no difference, in principle, between this case and a case where a local freight car is picked up and delivered to another destination on the run before the delivery of an interstate car. In
 
 New York Central & Hudson River R. Co. v. Carr,
 
 supra, it was held that
 
 *316
 
 the switching of an intrastate car out of an interstate train was interstate transportation. The fact that in the instant case the switching of the car of pipe, which was picked up on one track by the interstate train and delivered to another, occurred within the yard of the iron company is not controlling.
 

 Wabash Ry. Co. v. Bridal,
 
 8 Cir., 94 F. 2d 117, certiorari denied, 305 U. S. 602, 59 S. Ct. 63, 83 L. Ed. 382, affords an illustration of non-separability of employment. There a brakeman was employed on what was known as a ¡turn-around freight train between stations in Iowa. The crew did whatever switching was necessary at the intermediate stations. The train carried local as well as interstate shipments. On the evening before the accident, a car containing a local shipment consigned to an intermediate station was taken out of the interstate train and placed on what was known as the house track. The next morning, on the return trip, the train also had interstate shipments. When the train arrived at the station where the car had been temporarily placed the night before, the train crew was advised that it had to be moved for unloading. After the movement was completed it was discovered that the car had not been properly placed. The car was then started by means of pinch bars. When the brakeman undertook to set the brake and stop the car he was injured by reason of a defective brake step. It was there held (94 F. 2d 117, at page 123) that the brakeman was doing work “so closely related to interstate transportation as directly to affect it.”
 

 In
 
 Sullivan v. Wabash Ry. Co.,
 
 6 Cir., 23 F. 2d 323, a yard switchman was injured during switching operations while uncoupling an intrastate car at an intermediate yard on his way with the engine and caboose to another yard to get interstate cars. It was held that the dropping of the intrastate car at the intermediate yards was merely incidental to the dominant interstate task, that two independent tasks were not
 
 *317
 
 involved, and that the switchman was engaged in interstate transportation.
 

 In
 
 Rogers v. Mobile & Ohio R. Co.,
 
 337 Mo. 140, 85 S. W. 2d 581, certiorari denied 296 U. S. 642, 56 S. Ct. 178, 80 L. Ed. 456, a brakeman on an interstate train which contained intrastate cars was injured while the engine was backing intrastate cars into the sidé track. Tlie court held that he was engaged in interstate transportation when injured, and said (at page 584) “that, while ‘the true test (of the applicability of the Federal Act) is the nature of the work being done at the time of the injury......it is the employment that determines whether or not the injury to the employee is within the purview of the act and not necessarily the particular act of the employee at the precise time of the injury.’ ”
 

 In
 
 Youngstown & Ohio River R. Co. v. Halverstodt,
 
 6. Cir., 12 F. 2d 995, it was part of the duty of the crew of an interstate train, of which the plaintiff was a member, to switch empty cars which the train carried to a siding of a coal mining company. The siding was too short to take all the cars, and some were placed on another siding known as the “long siding.” On the return trip, which was also interstate in character, thé cars in the train were placed on a siding, and the two engines that were pulling them proceeded to the coal company switch and removed some loaded cars therefrom to the main track. They then went to the “long siding” and coupled the empty cars that had been left there. While pulling the empty cars out of the siding, the plaintiff was injured. It was held that such service was part of the handling of the interstate train, and that plaintiff, at the time of injury, was engaged in interstate transportation. See, also,
 
 Propst v. Spitznagle,
 
 215 Ind. 402, 19 N. E. 2d 263;
 
 Grand Trunk Western Ry. Co. v. Reid,
 
 6 Cir., 42 F. 2d 403;
 
 Pipal v. Grand Trunk Western Ry. Co.,
 
 341 Ill. 320, 173 N. E. 372.
 

 As in the court below, appellant relies on
 
 Murray
 
 
 *318
 

 v. Pittsburgh, Cincinnati, Chicago & St. Louis R. Co.
 
 263 Pa. 398, 107 A. 21. The plaintiff was there injured in a local switching operation at the yards of the Aetna Chemical Company. The facts warrant the construction that at the time of injury plaintiff was riding an empty car detached from the entire train. It further appears that three cars of the train, which were billed from points outside the state, and on which the plaintiff relied to substantiate Ms position that the train was engaged in interstate transportation, were consigned to the Aetna Chemical Company. It was held that deceased was engaged in merely local shifting operations detached from interstate commerce. The present case is distinguishable from those facts. Although the facts in the Murray case are not related in detail,
 
 Geraghty v. Lehigh Valley R. Co. 2
 
 Cir., 70 F. 2d 300, cited by appellant, lends support to the view that the interstate cars in the Murray case had reached their destination, and were involved only in a local switching movement. In the Geraghty case a freight conductor was fatally injured in the course of switching operations at the yard of the consignee when cars loaded with interstate shipments, delivered the previous day, were moved to replace empty cars. In ¡holding ¡that the conductor was not engaged in interstate transportation, jt was said (p. 302) : “Interstate movement ceases when cars reach their destination and are merely awaiting •discharge by the consignee, even though they must be moved again to get to the place of discharge......” In the Murray case, our Supreme Court, speaking of the facts before it, said (263 Pa. 398, at page 401, 107 A. 21, at page 22): “[The train crew’s] primary duties were intrastate and became interstate only as it was from time to time engaged in the delivery of through freight from other states.” It is sufficient to say that in the present case the duty to deliver the through shipment was paramount, and that such movement could not be separated into intrastate and interstate acts.
 
 *319
 
 The interstate car had not reached its destination, and at all times was part of the train upon which deceased was killed. It is not to be overlooked that the car to be transferred and the other cars picked up for use in the operation were attached to, and became a part of, the interstate train. To hold in such a case as is here presented that the interstate character of the train was momentarily lost by a mere switching operation before it reached its destination would result in a destruction of the unity of the federal act as construed by the Supreme Court of the United States.
 
 Philadelphia & Reading Ry. Co. v. Di Donato,
 
 256 U. S. 327, 331, 41 S. Ct. 516, 65 L. Ed. 955. As said in
 
 Koons et ux. v. Philadelphia & Reading Ry. Co.,
 
 supra, p. 470, there are no degrees of interstate engagements. Moreover, this court must follow the views of the Supreme Court of the United States relating to the Federal Employers’ Liability Act, 45 U. S. C. A. §51 et seq.
 
 Chesapeake & Ohio Ry. Co. v. Kuhn,
 
 284 U. S. 44, 47, 52 S. Ct. 45, 76 L. Ed. 157.
 

 Judgment of the court below is affirmed.
 

 [1]
 

 Movement from the point of origin to the place of ultimate destination may be so interrupted that from the point of interruption a new and local service is obtained. For cases of this character, see
 
 Spohane, Portland & Seattle Ry. Co. v. Martin,
 
 9 Cir., 80 F. 2d 322; cases cited in
 
 Jordan v. Erie R. Co.,
 
 146 Pa. Superior Ct. 134, 22 A. 2d 116. The -present facts are not parallel to the situations therein.