IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2024

# IN RE EPIK W. ET AL.

**Appeal from the Circuit Court for Unicoi County**
No. C8696    Suzanne Cook, Judge

_____

**No. E2023-01417-COA-R3-JV**

_____

The present appeal originates out of a Juvenile Court dependency and neglect proceeding. During the pendency of the case in the Juvenile Court, the Nenana Native Association filed a notice of intervention and averred that the two children at issue in this appeal are "Indian Children" under the Indian Child Welfare Act. The Nenana Native Association requested that the Juvenile Court enter an order acknowledging its status as these children's tribe, and the Juvenile Court subsequently did so. Although the Nenana Native Association was allowed to intervene as a party in the case, the Juvenile Court later entered an order denying a request that the case be transferred to a tribal court. An appeal was thereafter pursued in the Circuit Court, and the Circuit Court, considering the matter de novo under Tennessee Code Annotated section 37-1-159(a), also entered an order denying transfer. Although the Nenana Native Association now pursues an appeal of the Circuit Court's order in this Court, we conclude that the Circuit Court lacked jurisdiction to hear the interlocutory appeal from the Juvenile Court. Accordingly, we vacate the Circuit Court's judgment and remand the case back to the Circuit Court with instructions that it remand the matter back to the Juvenile Court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Kathryn Fort, East Lansing, Michigan, and Joshua J. Bond, Knoxville, Tennessee, for the appellant, Nenana Native Association.

Suzanne Shackelford Queen, Bristol, Tennessee, for the appellee, George W.[1]

_____

[1] Did not file a brief and did not participate in the appeal.

Stana M. Donnelly, Erwin, Tennessee, for the appellees, David H. and Amy H.[2]

Sarah Larkin, Johnson City, Tennessee, Guardian ad Litem.[3]

Jonathan Skrmetti, Attorney General and Reporter, J. Matthew Rice, Solicitor General, Amber L. Barker, Senior Assistant Attorney General, and Katherine P. Adams, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

## BACKGROUND

This appeal arises out of a dependency and neglect proceeding filed in the Unicoi County Juvenile Court. The initiating petition was filed by the Tennessee Department of Children's Services ("the Department") following the death of the mother of the two children at issue herein, and the petition averred that the father of these children ("Father") had "no contact or visitation" with them and was located in Alaska. Of note, while the matter was pending in the Juvenile Court, the Nenana Native Association ("the Tribe") filed a notice asserting that the children at issue in this appeal ("the Children") are "Indian Children" under the Indian Child Welfare Act ("ICWA"), and it requested that the Juvenile Court enter an order that would (a) acknowledge the Tribe's status as the Children's tribe and (b) recognize the Tribe as a party to the underlying proceedings. The Juvenile Court subsequently recognized the Tribe's intervention and made it a party to the proceedings, and the Tribe and Father thereafter requested that the case be transferred from Tennessee to the Nenana Tribal Court in Alaska pursuant to a provision in the ICWA, 25 U.S.C. § 1911(b). Pursuant to that provision:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.

25 U.S.C. § 1911(b). A separate provision, 25 U.S.C. § 1903, lists both "foster care placement" and "termination of parental rights" as included within the provision's definition of a "child custody proceeding."

In the course of responding to the request for a transfer under the ICWA, the

---

[2] Did not file a brief and did not participate in the appeal.
[3] Did not file a brief and did not participate in the appeal.

Department stated that there was "no dispute that these are child custody proceedings under ICWA"; according to the Department, the issue before the Juvenile Court was "the application of the good cause exception found in [25 U.S.C. § 1911(b)]." The Department further referenced, however, the existence under Tennessee law of the "Existing Indian Family Doctrine," specifically pointing to a couple of unreported decisions from this Court in support of the contention. The Department argued to the Juvenile Court that, if the court "finds that the [Existing Indian Family Doctrine] does apply then consequently [the ICWA] would not."[4] As an aside, we observe that in the present appeal before this Court, the Department specifically disclaims the vitality of the Existing Indian Family Doctrine, arguing that federal regulations "foreclose reliance" on it.

When the Juvenile Court later entered an order adjudicating the Tribe and Father's request that the case be transferred, it denied the request to transfer but, in doing so, did not make the "good cause" determination referred to in 25 U.S.C. § 1911(b). Rather, the Juvenile Court held that the Existing Indian Family Doctrine was recognized in Tennessee and, finding that doctrine to be "controlling law" on the issue before it, determined that the ICWA did not apply to this case. In connection with the entry of its order, the Juvenile Court recited that "this is a Final Order." Insofar as the record transmitted to us on appeal admits, the Tribe still remained a party to the underlying Juvenile Court proceeding, as the Juvenile Court did not vacate its prior order recognizing intervention and granting the Tribe party status.

An appeal to the Unicoi County Circuit Court soon ensued after the Juvenile Court's denial of transfer, the apparent jurisdictional premise being that the appeal was allowed under Tennessee Code Annotated section 37-1-159.[5] Indeed, when the Circuit Court ultimately entered the order from which the present appeal was directly taken, it stated that a de novo trial had been held pursuant to that section of the Code.

Like the Juvenile Court, the Circuit Court held that it was proper to deny the Tribe and Father's request for transfer, although the Circuit Court made a number of alternative rulings in connection with that decision.[6] This appeal, which was instituted by the Tribe, then followed.

## DISCUSSION

---

[4] "The Existing Indian Family Doctrine rests on the premise that the ICWA was enacted to protect Native American families and culture and has no applicability where a child's Native American ties are genetic only without any authentic ties related to culture or heritage." *In re K.L.D.R.*, No. M2008-00897-COA-R3-PT, 2009 WL 1138130, at *3 (Tenn. Ct. App. Apr. 27, 2009).

[5] In part, that statute provides: "Any appeal from any final order or judgment in an unruly child proceeding or dependent and neglect proceeding, filed under this chapter, may be made to the circuit court that shall hear the testimony of witnesses and try the case de novo."

[6] Given our disposition in this appeal, *see infra*, we conclude that it is unnecessary to go into any specific detail about these various rulings.

Although through this appeal the Tribe ascribes various errors to the analysis contained within the Circuit Court's order, the Department maintains that the Circuit Court lacked jurisdiction to even enter that order. Because the existence of the Circuit Court's jurisdiction is a threshold consideration that we would be obligated to consider even if it had not been raised by the Department, *see* Tenn. R. App. P. 13(b) ("The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review . . . ."), we turn our attention to it now.

"Subject matter jurisdiction concerns a court's lawful authority to adjudicate a controversy and derives in all cases, either explicitly or implicitly, from a constitutional or legislative act." *Schutte v. Johnson*, 337 S.W.3d 767, 769 (Tenn. Ct. App. 2010). Because it concerns the basis on which a court derives its authority to act, subject matter jurisdiction cannot be waived. *Hirt v. Metro. Bd. of Zoning Appeals*, 542 S.W.3d 524, 527 (Tenn. Ct. App. 2016). "[W]hen an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

Here, as noted above, the Circuit Court's order references Tennessee Code Annotated section 37-1-159 in connection with its resolution of the appeal taken from the Juvenile Court. Although that statutory provision does provide authority for the Circuit Court to exercise jurisdiction in a dependency and neglect proceeding and act, "not . . . as a reviewing court," *In re Ravyn R.*, No. E2017-01001-COA-R3-JV, 2018 WL 1956488, at *3 (Tenn. Ct. App. Apr. 25, 2018), but de novo as the Circuit Court did here,[7] the afforded jurisdiction is contingent upon the existence of a final order or judgment. Specifically, we observe that Tennessee Code Annotated section 37-1-159(a) provides in pertinent part as follows to that end: "Any appeal from any final order or judgment in an unruly child proceeding or dependent and neglect proceeding . . . may be made to the circuit court that

---

[7] Of course, the Circuit Court did not try the *entire case* de novo, as is contemplated for appeals under section 37-1-159:

> [T[he circuit court in a dependency and neglect proceeding may not rely solely on the record made before the juvenile court, but under Tenn. Code Ann. § 37-1-159(c) must try the case *de novo* by hearing witnesses again and by rendering an independent decision based on the evidence received in the circuit court proceeding. Black's Law Dictionary defines a *de novo* trial as "[a] new trial on the entire case-that is, on both questions of fact and issues of law-conducted as if there had been no trial in the first instance." Consequently, the circuit court is not "reviewing" the juvenile court's decision; instead, it is conducting a new proceeding as though the petition were originally filed in circuit court.

*Green v. Green*, No. M2007-01263-COA-R3-CV, 2009 WL 348289, at *8 (Tenn. Ct. App. Feb. 11, 2009) (internal citations omitted).

- 4 -

shall . . . try the case de novo." Tenn. Code Ann. § 37-1-159(a). The looming question, then, is whether the Juvenile Court's order constituted a final order or judgment so as to allow the appeal to the Circuit Court.

Respectfully, we are of the opinion that we need not spill much ink on that particular subject, as it is clear to us that the Juvenile Court order that was appealed to the Circuit Court was not final. Indeed, the dependency and neglect proceeding itself remained pending, as one of the principal rulings in the appealed order was simply that the Juvenile Court would not transfer the case to the tribal court. Additional proceedings in the Juvenile Court are clearly within the contemplation of the order,[8] and there is nothing in the record to suggest that both the adjudicatory and dispositional phases of the dependency and neglect proceeding were resolved. The case was not final. *See In re Conner C.*, No. M2016-01669-COA-R3-JV, 2017 WL 1049669, at *2, *4 (Tenn. Ct. App. Mar. 20, 2017) (noting that dependency and neglect proceedings are conducted in phases and noting that a final judgment is one that leaves nothing else for the trial court to do). That the Juvenile Court recited that its order was final did not make it so.[9] Likewise, we are unpersuaded by the Tribe's assertion on appeal that the Juvenile Court's order was final, and we do not find favor in any of the various arguments offered by the Tribe in its briefing as to why the appeal to Circuit Court was valid even in the absence of a final judgment. We will attempt to address these arguments below.

Although the Tribe acknowledges that a final disposition of the entire case is generally required in Tennessee, it points to the Advisory Commission Comments to Rule 118 of the Tennessee Rules of Juvenile Practice and Procedure, which state that "orders other than an order entered following a dispositional hearing may be considered 'final orders.'" True, but a *final order* is nonetheless still required, and we observe that the Advisory Commission Comments relied upon by the Tribe go on to reference the Black's Law Dictionary definition of a final order, i.e., an order that is dispositive of the entire case, as well as the conception of a final judgment under Tennessee case law, i.e., that the judgment leaves nothing further for the judgment of the court. Such standards are clearly not satisfied here. Although the Tribe follows up its discussion to the Advisory Commission Comments to Rule 118 by stating that "[n]o party made an argument the

---

[8] The order expresses an opinion about what the Juvenile Court can consider "in making decisions regarding this case."

[9] Although trial courts are afforded a means to certify interlocutory orders as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, the Tennessee Rules of Civil Procedure do not apply in dependency and neglect actions in the Juvenile Court. *In re Brian G.*, No. M2017-01586-COA-R3-JV, 2018 WL 4181474, at *3 n.4 (Tenn. Ct. App. Aug. 30, 2018). Further, we are not aware of any analog to Rule 54.02 that exists in the Tennessee Rules of Juvenile Practice and Procedure, which expressly apply to "dependent and neglect proceedings" in the Juvenile Court. Tenn. R. Juv. P. 101(b). Moreover, the Tennessee Rules of Juvenile Practice and Procedure expressly reiterate the final judgment rule. *See* Tenn. R. Juv. P. 118(a) ("Appeals shall be taken pursuant to T.C.A. § 37-1-159."); Tenn. R. Juv. P. 118(c) ("The right to an appeal attaches upon entry of the final order.").

Juvenile Court's order was not final for the purpose of the *de novo* trial [in the Circuit Court]," such an observation is of no moment. Again, subject matter jurisdiction cannot be waived. *Hirt*, 542 S.W.3d at 527.

Adjacent to the above arguments, the Tribe argues that the Juvenile Court's order was final because, according to the Tribe, "[b]y denying ICWA's application to the case, the Tribe will no longer be a party to the neglect case." Moreover, citing Rule 54 of the Tennessee Rules of Civil Procedure, the Tribe contends that "[u]nder Tennessee Rules, a denial of intervention is a final order for the purpose of appeal."[10] A couple of points are worth making here. First, to the extent that the Tribe is invoking the Tennessee Rules of Civil Procedure to endorse the propriety of appealing—from the Juvenile Court to the Circuit Court—what is otherwise an interlocutory order, we note again one of the points covered in a prior footnote within this Opinion: The Tennessee Rules of Civil Procedure do not apply in dependency and neglect actions in the Juvenile Court. *In re Brian G.*, No. M2017-01586-COA-R3-JV, 2018 WL 4181474, at *3 n.4 (Tenn. Ct. App. Aug. 30, 2018). Second, although we will engage more directly with certain considerations surrounding the ICWA later in this Opinion, the Tribe's specific contention that its party status was altered by dint of the Juvenile Court's order is not accurate. The Tribe was previously granted intervention and party status in the Juvenile Court, and although the Juvenile Court did conclude that the ICWA would not ultimately apply due to the Existing Indian Family Doctrine, the Juvenile Court did not dismiss the Tribe as a party. We point this out specifically because, in several places in its briefing, the Tribe's purported loss of party status in the Juvenile Court appears to be at the core of its reasoning as to why an appeal to the Circuit Court should, in its eyes, be deemed necessary. For instance, the Tribe argues that if this Court does not countenance its ability to appeal the Juvenile Court's order, "it will not have standing to appeal any future orders in this case." Given that the Tribe still appeared to technically remain a party to the Juvenile Court proceedings, though, it is unclear that there would actually be anything preventing the Tribe's ability to appeal the Juvenile Court's order after the entry of a final judgment.

The Tribe also points to a couple of Nebraska decisions that treated certain issues under the ICWA as final. Although, again, we will more directly engage with certain considerations connected to the ICWA later in this Opinion in relation to another argument offered by the Tribe, we do not regard the relied-upon Nebraska decisions to be of any particular guidance here given that they both were predicated upon a specific Nebraska statutory provision allowing for the appealability of orders affecting a "substantial right." *See, e.g.*, *In re Manuel C.*, 988 N.W.2d 520, 527 (Neb. 2023) (concluding the denial of the right to intervene under the ICWA "affects a substantial right"). As the Department has observed, "[t]he Tribe points to no such provision in Tennessee law."

With all that said, if the order appealed from the Juvenile Court was not final within

---

[10] Earlier in its briefing submitted on the question of the Circuit Court's jurisdiction, the Tribe cited both Rule 54 and Rule 24.05 of the Tennessee Rules of Civil Procedure to assert the same general point.

the meaning of Tennessee's jurisprudence, then what was the basis for the Circuit Court's jurisdiction?  The Tribe offers a couple of additional arguments in an attempt to explain why its appeal of the Juvenile Court's order was proper.  First, the Tribe argues that a final order was not necessary given that the ICWA, under 25 U.S.C. § 1914, provides that "the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated" certain provisions of the ICWA.  25 U.S.C. § 1914.  According to the Tribe, one of the provisions referenced in 25 U.S.C.§ 1914—section 1911—includes, among other things, "rights of intervention," and the Tribe maintains that its appeal of the Juvenile Court's order was brought to address "the violation of Section 1911."

We observe that 25 U.S.C. § 1914 has been countenanced under some authority as a mechanism to raise issues, for the first time, within the context of an appeal.  This Court has even referenced this line of cases previously.  *See In re Kentavious M.*, No. W2010-00483-COA-R3-PT, 2010 WL 5140598, at *7 (Tenn. Ct. App. Dec. 14, 2010) (noting that "[c]ourts in other states have taken the position that [25 U.S.C. § 1914] provides for review of certain violations of the ICWA for the first time on appeal, even if not raised in the trial court").  However, this notion that a party may initially, on appeal, raise an issue under the aegis of 25 U.S.C. § 1914 does not in our view actually mean that the underlying appeal is necessarily a valid one.  In this vein, we note that we do not find favor in the Tribe's apparent suggestion here that 25 U.S.C. § 1914 provided a jurisdictional basis for its appeal to the Circuit Court.  Indeed, the statutory authority on which it relies specifically allows a tribe to petition "any court of <u>competent jurisdiction</u>."  25 U.S.C. § 1914 (emphasis added).  That is, the statute confers a right to petition courts, but only those courts that otherwise have jurisdiction.  As one court opined when expressing a similar understanding:

> While Congress did not define the phrase, "any court of competent jurisdiction," found in section 1914, it did not intend that section 1914 should pre-empt the subject matter jurisdiction of any state court or confer new subject matter jurisdiction upon any state court regarding rights created by sections 1912 and 1913 of the ICWA. The legislative history of the ICWA indicates that Congress did not intend to let local rules concerning such matters as pleading or burden of proof defeat the purpose of the act. However, it concluded that it is the "duty of State courts, *otherwise having jurisdiction of the subject matter,* to enforce" federal substantive rights created by the ICWA. (1978 U.S.Code Cong. & Admin.News, at pp. 7530, 7541; emphasis added.) In support of this conclusion, it quoted *In re Second Employers' Liability Cases* (1912) 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327, which provides in pertinent part: "We come next to consider whether rights arising from congressional act may be enforced, as of right, in the courts of the States *when their jurisdiction, as prescribed by local laws, is adequate to the occasion* .... [¶] We conclude that rights arising under the (Federal) act in question may be enforced, as of right, in the courts of the States *when their*

*jurisdiction, as prescribed by local laws, is adequate to the occasion.*" (*Ibid.,* at pp. 55, 59, 32 S.Ct. at pp. 177, 179; Emphasis added.)

*Slone v. Inyo Cnty. Juvenile Court*, 282 Cal. Rptr. 126, 128 (Cal. Ct. App. 1991).  Thus, in our opinion, 25 U.S.C. § 1914 simply did not afford the Circuit Court with authority to conduct a de novo hearing under Tennessee Code Annotated section 37-1-159 when the prerequisite for jurisdiction under section 37-1-159, which is a "final order or judgment," was absent.  *See* Tenn. Code Ann. § 37-1-159 ("Any appeal from any final order or judgment in an unruly child proceeding or dependent and neglect proceeding . . . may be made to the circuit court that shall . . . try the case de novo.").

This brings us to the final argument the Tribe has offered on appeal in support of the Circuit Court's alleged jurisdiction: that the Juvenile Court's order was appealable under the collateral order doctrine.  As this Court has previously stated, the collateral order doctrine "originated in *Cohen v. Beneficial Industrial Loan Corp.*"  *Ibsen v. Summit View of Farragut, LLC*, No. E2018-01249-COA-R3-CV, 2019 WL 6790291, at *5 (Tenn. Ct. App. Dec. 11, 2019).  In *Cohen*, the United States Supreme Court endorsed the appealability of an order that it concluded fell "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).  Thus, when an order is deemed appealable under the collateral order doctrine, the order, although not an end to the litigation, is nonetheless "appropriately deemed 'final.'"  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Cohen*, 337 U.S. at 545-46).  Within the federal courts, the doctrine is understood not as an exception to the final decision rule in 28 U.S.C. § 1291,[11] but a "practical construction" of it.  *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (quoting *Cohen*, 337 U.S. at 546).

The conditions for a collateral order appeal have been described as stringent, *id.* at 868 (citing *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989)), and courts

---

[11] This statute provides:

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

28 U.S.C. § 1291.

considering potential application of the doctrine are to "look to categories of cases, not to particular injustices." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988). As is frequently related in the case law, in order for decisions to qualify as appealable orders for purposes of the collateral order doctrine, the decisions must be "conclusive, . . . resolve important questions separate from the merits, and . . . [be] effectively unreviewable on appeal from the final judgment." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995). As to this last consideration, "[t]hat a ruling 'may burden litigants in ways that are only imperfectly reparable by appellate reversal of a [final judgment] . . . has never sufficed.'" *Mohawk Indus., Inc.*, 558 U.S. at 107 (quoting *Digit. Equip. Corp.*, 511 U.S. at 872). "As long as the class of claims, taken as a whole, can be adequately vindicated by other means," the possibility that litigation might be speeded up does not provide a basis for jurisdiction. *Id.*; *see also Chasser v. Achille Lauro Lines*, 844 F.2d 50, 52-53 (2d Cir. 1988) ("[T]he mere fact that ultimately it might appear that an interim reversal would have been more efficient . . . is not a reason to grant immediate review.").

The collateral order doctrine has been applied within Tennessee previously, but as the Tennessee Court of Criminal Appeals recently noted, the only Tennessee cases that have ever applied the doctrine involved "appeals of orders regarding the issue of qualified immunity in federal civil rights claims." *State v. Davis*, No. M2023-00065-CCA-R3-CO, 2024 WL 1528465, at *4 (Tenn. Crim. App. Apr. 9, 2024).[12] The Tribe argues the collateral order doctrine should be applied in this case too, however, and they note that some courts have applied the doctrine to orders involving issues under the ICWA, citing, for instance, a decision of Maine's Supreme Judicial Court. *See In re Children of Shirley T.*, 199 A.3d 221, 224 n.6 (Me. 2019) (considering appeal of decision denying transfer).[13]

The crux of the Tribe's argument in relation to application of the collateral order doctrine rests on the notion that there was a "denial of intervention" and that said denial "will not be reviewable later due to the Tribe's status, or lack thereof, as a party." According to the Tribe, this appeal is the "only opportunity" it will have to ensure its rights are protected. As a technical matter, we note again that the Juvenile Court did not deny intervention to the Tribe. In fact, the Tribe was made a party, and although the Juvenile Court did later conclude that the ICWA did not apply, the Tribe still remained a party in the Juvenile Court insofar as the record admits. Thus, there would be an opportunity for the Tribe to appeal following the Juvenile Court proceedings. The primary premise behind the Tribe's argument relative to the collateral order doctrine is therefore simply not supported by this record.[14]

---

[12] These cases involved application of the doctrine to allow appeals from the Circuit Court to this Court. *See Cantrell v. DeKalb Cnty.*, 78 S.W.3d 902 (Tenn. Ct. App. 2001); *Fann v. Brailey*, 841 S.W.2d 833 (Tenn. Ct. App. 1992).

[13] *But cf. In re T.F.*, 972 N.W.2d 1, 8 (Iowa 2022) (concluding that "a denial of transfer order is not an appealable final order" and noting that "[t]he Tribe . . . w[as] not out of the case after the denial of transfer order in this case").

[14] We are not oblivious to the fact that the Juvenile Court, in its "Order Recognizing Intervention,"

This fact notwithstanding, the Tribe's appellate briefing also generally points to a concern that a determination regarding the application of the ICWA is "foundational," and it argues that, because of the Juvenile Court's action, "jurisdictional issues and the substantial rights of the tribe, Indian children, and parents have not been appropriately addressed." Thus, whereas the thrust of the Tribe's argument still proceeds from the articulated premise that it was denied intervention and would be *unable* to appeal in the future, the Tribe also makes allusion to an argument built on a premise that a delayed appeal would be substantially harmful. In one of its filings in this Court, for instance, the Tribe argues as follows: "The Department does not address how moving forward to a 'final order' in a case without ICWA's substantive and procedural protections creates irreversible harms and wastes judicial resources." Moreover, according to the Tribe, an appeal after a final order in the Juvenile Court "delays permanency . . . [and] renders ICWA's protections all but useless."

This argument requires careful consideration, particularly considering that *some* courts have, as the Tribe points out, allowed for the appeal of interlocutory orders involving issues under the ICWA. Of note, although its decision is not specifically cited by the Tribe, we observe that one court even invoked the collateral order doctrine in a case involving Indian children due to the very concern—permanency of the children—that the Tribe emphasizes in its reply brief in this appeal. *See People in Interest of L.R.B.*, 487 P.3d 1058, 1064 (Colo. App. 2019) (holding that an order denying a tribe's motion to transfer jurisdiction in a proceeding involving an Indian child may be immediately appealed under the collateral order doctrine and reasoning that, "[w]hile a tribe may challenge the denial . . . following a final adoption decree," "if it is determined at that time that the court erroneously denied the motion to transfer jurisdiction, the children's permanency would be seriously disrupted").

Thus, notwithstanding the Tribe's frequent contention that it will be unable to appeal in the future, its allusion to the prospect of "irreversible harms" incident to a delayed appeal is, as we view things, perhaps the more appropriate focal point in determining whether the collateral order doctrine should be expanded to apply to cases such as the present one.[15]

cited to the ICWA when it ordered that the Tribe be made a party to the proceedings. The Juvenile Court's subsequent determination that the ICWA did not apply, however, does not alter the fact that the Tribe remained a party that could, contrary to the Tribe's suggestion, appeal following a final determination by the Juvenile Court. Indeed, the Juvenile Court did not vacate its prior order making the Tribe a party.

[15] For purposes of our analysis, we refrain from expressing a definitive opinion on the theoretical appropriateness of potentially importing the framework of the collateral order doctrine (so as to actually allow an appeal of an otherwise interlocutory order) to our own body of jurisprudence regarding the appealability of orders from the Juvenile Court to the Circuit Court. Doing so is not necessary given that our application of that framework counsels against according the class of orders at issue collateral order status in the context of dependency and neglect proceedings in the Juvenile Court. With that said, we observe that a justice on the Georgia Supreme Court recently expressed his opinion regarding the "doubtful legal footing of that doctrine" in Georgia in light of the fact that prior and current versions of Georgia's appellate-jurisdiction statute have been interpreted to mean that a judgment is not "final" when any portion

Yet, inasmuch as the framework of the doctrine "look[s] to categories of cases, not to particular injustices," *Van Cauwenberghe*, 486 U.S. at 529, and further looks to see whether "the class of claims, taken as a whole, can be adequately vindicated by other means," *Mohawk Indus., Inc.*, 558 U.S. at 107, the question here in our opinion boils down to the following: is it necessary to accord final judgment status to orders entered by the Juvenile Court in dependency and neglect proceedings wherein requests for transfer are denied as a result of determinations that the ICWA does not apply? As discussed below, we respectfully conclude that extending such collateral order status—so as to enable appeals under Tennessee Code Annotated section 37-1-159 for that class of cases—is not necessary.

As analyzed in the federal courts, the determination of whether a class of orders should be accorded collateral order status frequently involves courts' consideration of the availability of existing means for seeking interlocutory review. *See, e.g.*, *Mohamed v. Jones*, 100 F.4th 1214, 1225 (10th Cir. 2024) (noting there are "alternative means to pursue interlocutory review" and that such options "reinforce the . . . call for a narrow collateral order doctrine"); *Leonard v. Martin*, 38 F.4th 481, 488 (5th Cir. 2022) ("Because these alternative means of review exist, Turnipseed cannot show that collateral order appeals are necessary to ensure effective review . . . ."); *Swanson v. DeSantis*, 606 F.3d 829, 833-34 (6th Cir. 2010) (noting that there were several potential avenues of review apart from collateral order appeal and stating that "[t]here is no compelling need to stretch the

---

of the case remains pending. *See Buckner-Webb v. State*, 878 S.E.2d 481, 490-91 (Ga. 2022) (Pinson, J., concurring) (noting that the doctrine represents a "construction" of 28 U.S.C. § 1291 in the federal courts, criticizing the fact that there had not been any "construction" of Georgia's appellate-jurisdiction statute when the collateral order doctrine was imported, and opining that Georgia's statute "leaves no wiggle room for a doctrine that allows appeals when any part of the case is still pending"). Such an observation is potentially of note here in light of what we discussed earlier concerning Rule 118 of the Tennessee Rules of Juvenile Practice and Procedure (which states that appeals shall be taken pursuant to Tennessee Code Annotated section 37-1-159), namely that, in its Advisory Commission Comments, the Black's Law Dictionary definition of a final order, i.e., an order that is dispositive of the entire case, and the conception of a final judgment under Tennessee case law, i.e., that the judgment leaves nothing further for the judgment of the court, were both referenced. Likewise, we have referenced the same general considerations of finality specifically in connection with de novo appeals from the Juvenile Court to the Circuit Court. *See In re Conner C.*, 2017 WL 1049669, at *4 (finding no error in the Circuit Court's conclusion that the Juvenile Court's order was not final and noting that a final judgment is one that resolves all issues in the case and leaves nothing else for the trial court to do). Moreover, once there is appellate jurisdiction in the Circuit Court under section 37-1-159, the Circuit Court "shall try the matter de novo." *In re S.C.*, No. W2022-01709-COA-R3-JV, 2024 WL 853725, at *8 (Tenn. Ct. App. Feb. 29, 2024). As we have noted in this context, Black's Law Dictionary defines a de novo trial as a "new trial on the entire case." *Green*, 2009 WL 348289, at *8 (emphasis added). Although in this respect the Circuit Court acts to "conduct[] a new proceeding as though the petition were originally filed in circuit court," *id.*, its jurisdiction under section 37-1-159 is, again, conditioned upon the existence of a final judgment, i.e., a Juvenile Court order that resolves all issues in the matter and leaves nothing else to be done. The statutory appeal under section 37-1-159 is clearly therefore not envisioned as some component of piecemeal review given that the Circuit Court is to adjudicate the entire case anew.

- 11 -

collateral order doctrine to fit this case"). Here, such a consideration militates against application of the collateral order doctrine. Indeed, to the extent that the Tribe is arguing that the Juvenile Court's determination regarding the inapplicability of the ICWA creates harm that is irreversible if left unaddressed, we observe that there is an existing remedial avenue available to Juvenile Court litigants to address such claimed harm on an interlocutory basis. In pertinent part, we note that Tennessee provides for interlocutory review of dependency and neglect cases by way of a common law writ of certiorari proceeding. *See In re Lucas H.*, 634 S.W.3d 1, 9 (Tenn. Ct. App. 2021) (noting that this Court had previously stated that "review of an interlocutory decision of a juvenile court in a dependency and neglect proceeding may be had only by filing a petition for a common law writ of certiorari in circuit court"); *see also State v. Tipton*, No. 01-A-01-9510-CV00445, 1996 WL 17225, at *4 (Tenn. Ct. App. Jan. 19, 1996) ("Circuit courts may review a juvenile court's interlocutory decision using the common-law writ of certiorari."); Tenn. Code Ann. § 16-10-112 ("The circuit court has an appellate jurisdiction of all suits and actions, of whatsoever nature, unless otherwise provided, instituted before any inferior jurisdiction, whether brought by appeal, certiorari, or in any other manner prescribed by law."). Such a proceeding has been deemed appropriate to correct (1) fundamentally illegal rulings, (2) proceedings that are inconsistent with essential legal requirements, (3) proceedings that effectively deny a party his or her day in court, (4) decisions that are beyond the lower tribunal's authority, (5) plain and palpable abuses of discretion, and (6) proceedings where a party has lost a right or interest that may never be recaptured. *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008).

The Tribe's suggestion of "irreversible harms" and its proffered concern that a delayed appeal would "render[] ICWA's protections all but useless" fit conceptually within the above framework. Indeed, as discussed by former Justice Henry when considering the scope of the common law writ:

> The mere fact that an appeal may ultimately afford a vehicle for the presentation of the errors asserted may well be of no significance. The right or interest sought to be protected may be eroded or devitalized notwithstanding the successful pursuit of an appeal. Again, the ultimate test must be whether, absent the use of the common law writ, either party . . . loses a right or forfeits an interest that can never be recaptured.

*State v. Johnson*, 569 S.W.2d 808, 815–16 (Tenn. 1978).[16] Thus, inasmuch as there is an existing remedial framework that allows litigants to address the type of harm that the Tribe suggests is implicated here concerning the Juvenile Court's rejection of the ICWA, we decline to apply the collateral order doctrine.

---

[16] Although Justice Henry's discussion was in the context of a criminal case, we have previously noted that there is "no reason as to why the principles discussed should not be extended to cases reviewed under this Court's jurisdiction." *In re Lucas H.*, 634 S.W.3d at 9 n.9.

In light of our decision not to accord collateral order status to Juvenile Court orders that are of the same class as the one entered by the Juvenile Court here, it follows that the Circuit Court's exercise of jurisdiction under section 37-1-159 was without basis. Indeed, as we have already noted, there was no final order entered by the Juvenile Court. Because of our conclusion that the Circuit Court lacked subject matter jurisdiction, we do not review the propriety of its determinations but instead vacate its order and remand the case back to the Circuit Court with instructions that it remand the matter back to the Juvenile Court for further proceedings.

In remanding the case, however, we would be remiss if we did not call the Juvenile Court's attention to the shared agreement that both the Department and the Tribe have in this appeal regarding the Existing Indian Family Doctrine, which was the doctrinal basis upon which the Juvenile Court rejected the ICWA and denied the request for transfer. Indeed, in response to the Tribe's general advocacy on appeal concerning the invalidity of the Existing Indian Family Doctrine,[17] the Department has specifically disclaimed the vitality of the doctrine, arguing, as we previously noted, that federal regulations "foreclose reliance" on it.[18] Although we have little doubt that the parties still disagree on other issues relevant to a decision to transfer this matter to the tribal court, the shared agreement between the Tribe and the Department regarding the Existing Indian Family Doctrine strongly counsels in favor of the Juvenile Court revisiting the transfer request (as the doctrine was its sole cited basis for denial).[19]

## CONCLUSION

For the reasons stated herein, we conclude that the Circuit Court lacked subject matter jurisdiction for an appeal under Tennessee Code Annotated section 37-1-159, and we therefore vacate its judgment and remand the case back to the Circuit Court with instructions that it remand the matter back to the Juvenile Court for further proceedings.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

[17] Part of the Circuit Court's order had also been predicated upon the doctrine.

[18] The Department openly acknowledges that it had relied on the doctrine in the Juvenile Court and the Circuit Court but states that it "must agree" with the Tribe's argument that the doctrine "has been repudiated by sister states, is not binding on Tennessee courts, and has been clearly rejected by federal regulation." It also notes that the two appellate decisions in Tennessee applying the doctrine were not only unreported, but had also preceded federal regulations that discredited the doctrine.

[19] Again, at the Juvenile Court level, the denial of the request for transfer flowed directly from the Juvenile Court's determination concerning the Existing Indian Family Doctrine.